**SOUTHERN UNION PRODUCTION COM-PANY, Plaintiff in Error,**

v.

**CORPORATION COMMISSION of the State of Oklahoma; and Eason Oil Company, Defendants in Error.**

**No. 42116.**

Supreme Court of Oklahoma.

Jan. 27, 1970.

Paul Brown, Brown, Verity & Brown, Oklahoma City, William S. Jameson, Dallas, Tex., for plaintiff in error.

T. Murray Robinson, Oklahoma City, for Eason Oil Co., defendant in error.

Ralph L. Wampler, Oklahoma City, for corporation commission of Oklahoma, defendant in error.

LAVENDER, Justice.

This is an appeal from an order (No. 62,532) of the Corporation Commission of the State of Oklahoma, which involved a prior pooling order (No. 53,163) of the Commission affecting certain common sources of supply underlying Section 14, Township 23 North, Range 13 West, in Woods County, and purported to determine and declare the legal effect of such prior pooling order at the time of its entry and at the time of the entry of the later order (No. 62,532).

At the time of the entry of the prior pooling order, October 25, 1963, the oil and gas leasehold interests in that 640-acre governmental section were held in the following proportions: Plaintiff in error Southern Union Production Company (hereinafter called "Southern Union"), 402 acres, consisting of the East Half, and the East half of the Southwest Quarter, of the section; defendant in error Eason Oil Company (hereinafter called "Eason"), 160 acres, consisting of the Northwest Quarter of the section; and Anadarko Production Company (hereinafter called "Anadarko," but is not a party to this appeal), 78 acres, consisting of the West Half of the Southwest Quarter of the section.

By order of July 30, 1963, the Commission extended previously established 640-acre drilling and spacing units for the production of gas and gas condensate from the Basal Cherokee Sand to include this Section 14 and established that section as one drilling and spacing unit. By order of October 15, 1963, the Commission established 640-acre drilling and spacing units for the production of gas and gas condensate from the Tonkawa, Cottage Grove, Oswego, Chester, and Mississippi formations, with this Section 14 as one drilling and spacing unit. These orders provided the spacing unit bases for the pooling order involved in the order under attack herein, but are not involved in this appeal.

Thereafter, Southern Union filed an application for the pooling of the lessees' interests with respect to the Cherokee formation (which is another name for the Basal Cherokee Sand) underlying this Section 14, and Anadarko filed an application for the pooling of the lessees' interests with respect to the Cherokee, Tonkawa, Cottage Grove, Oswego, Chester, and Mississippi formations underlying this Section 14. The applications were combined for hearing, and, on October 25, 1963, the Commission entered its Order No. 53,163, which is involved in the Commission's order (No. 62,532) under attack in this appeal.

In its Order No. 53,163, the Commission ordered as follows:

"1. That the oil and gas leasehold interests in the Tonkawa, Cottage Grove, Oswego, Cherokee, Chester and Mississippi common sources of supply underlying Section 14, Township 23 North, Range 13 West, Woods County, Oklahoma, are hereby pooled for the production of gas and gas condensate from each of said common sources of supply, and Southern Union Production Company is hereby named the operator of said Unit, and is hereby permitted and authorized to drill and operate the well on said Unit for the production of gas and gas condensate from each of said common sources of supply.

"2. That for the purpose of this Order the sum of $90,000.00 is fixed as the cost of drilling and completing said well in said Mississippi lime formation a depth sufficient to test the same, and in the event there is a dispute as to such cost after said well has been completed, the Commission retains jurisdiction of this Cause for the purpose of redetermining such cost; that the sum of $35.00 per acre is hereby fixed as a fair and reasonable cash bonus to be paid to Eason Oil Company as compensation in lieu of the right to participate in the Working Interest in said well.

"3. That the said Eason Oil Company shall be permitted to participate in the Working Interest in said well by paying its proportionate part of the cost of drilling and completing the same, or furnishing satisfactory security for the payment thereof, within ten (10) days from the date of this Order; that in the event Eason Oil Company does not desire to participate in the Working Interest in said well, it shall be paid the sum of $35.00 per acre as compensation in lieu thereof.

"4. That Eason Oil Company is hereby required to elect, within ten (10) days from the date of this Order, as to which method it desires to pursue in the development of said Unit, and in the event it does not make such election it shall be assumed that it has elected to accept a bonus in the sum of $35.00 per acre as compensation in lieu of its right to participate in the Working Interest in said well.

"5. That Southern Union Production Company shall commence operations for the drilling of the above described well on said Unit within forty (40) days from the date of this Order, and continue the drilling thereof with due diligence to completion, or the provisions hereof shall be inoperative and this Order shall be null and void."

No appeal was taken from that order, and no question is raised as to the validity of that order, either on constitutional, jurisdictional, or other grounds.

Eason elected not to participate in the working interest in said well by paying its proportionate part of the cost of drilling and completing the same, and accepted a cash bonus of $5,600.00 (160 acres at $35.00 per acre), as provided for in the order. Southern Union drilled a well on the tract, which tested all of the formations mentioned in the order, and completed it as a "marginal gas well" in the Oswego formation, but plugged the well later. At the time of the making of the order under attack herein, no other well had been drilled on this unit.

Apparently Southern Union claims that, by its payment to Eason, and Eason's acceptance, of the cash bonus provided for in the Commission's Order No. 53,163, Southern Union became the owner (insofar as any production of oil or gas from any of the formations specified in that order is concerned) of all of the leasehold interest which Eason had held in this Section 14 at the time of the making of that order and the payment and acceptance of such cash bonus. And, apparently because of that claim and Eason's own claim that, by its election and acceptance of the cash bonus provided for in that order, it was excluded only from participation in any production

from the well authorized by that order, Eason filed an application with the Corporation, requesting the Commission to interpret its Order No. 53,163, and (on the basis of the drilling of the well authorized by that order, its completion as a dry hole, and the abandonment thereof) to declare "that all of the effectiveness of said Order is gone and that no party is either bound by, or has any further interest in, the provisions thereof."

After notice and hearing on such application, the Commission entered its Order No. 62,532, under attack in this appeal:

"1. That the drilling by Southern Union Production company of the well authorized by Order No. 53,161, and its subsequent abandonment as a dry hole, terminated all of the rights of development created by said pooling order in respect to the Tonkawa, Cottage Grove, Oswego, Chester, Mississippi, and Cherokee common sources of supply, and the parties are now in the same position they would be if such pooling order had not been entered."

"2. That all of the effect of Order No. 53,163 has terminated."

"3. That this order is limited to the interpretation of the pooling order and has no effect upon the spacing orders under' which such pooling order was entered."

■ Southern Union attacks this later order on two somewhat related grounds. The first one is to the effect that, under and by virtue of the provisions of the Commission's Order No. 53,163, it acquired all of the leasehold interest which Eason had held with respect to all of the formations mentioned in that order, underlying this Section 14, at the time of the making of that order and its payment, and Eason's acceptance, of the cash bonus provided for in that order. The second one (which is based partially upon the leasehold interest which it claims to have acquired under and by virtue of the provisions of said Order No. 53,163) is that the Corporation Commission was without jurisdiction to make

an order of the character and effect of its Order No. 62,532.

Although defendants in error concede that the Corporation Commission has no jurisdiction to try title, they argue that because of 52 O.S.1961, § 112, the Commission did have the authority to enter the order complained of here. That statute authorizes the Commission, upon a showing of substantial change in conditions subsequent to its earlier order, to enter an order repealing, amending, modifying or supplementing such earlier order. Eason contends that all it was asking the Commission to do, and all that it did, was "supplement" its previous order. We do not agree.

The application of Eason, as we have already seen, was, in part, that "this Commission should now determine that all of the effectiveness of said (earlier order No. 53,163) is gone and that no party is either bound by, or has any further interest in, the provisions thereof," and that the Commission " * * * determine the rights of the parties in said Section as to the horizons named therein." We are unable to see where such an order is properly within the statutory power of the Commission "to prevent or to assist in preventing the various types of waste of oil or gas prohibited by statute, or any of said wastes, or to protect or assist in protecting the correlative rights of interested parties, * * *", 52 O.S.1961 § 87.1(a) as amended effective June 3, 1963. It is expressly stated in the order appealed from (No. 62,532) that it is "limited to the interpretation of the pooling order and has no effect upon the spacing orders under which such pooling order was entered." In other words, the only "effect" of Order No. 62,532 was to find that as between Eason Oil Company and Southern Union Production Company, the latter had no more rights in the horizons involved than it had before the Commission entered its first order which resulted in the payment by Southern to Eason of the $5,600.00 and the subsequent drilling by Southern of a well which cost over $100,000.00. The earlier order (No. 53,163) and

the second order (No. 62,532) concerned the same horizons.

In Smith et al. v. Corporation Commission (1924), 101 Okl. 254, 225 P. 708, we held the Commission was without jurisdiction concerning a dispute between patrons of a public utility and the utility. We said that this was a private dispute properly referrable to a court of law. We said substantially the same thing in Chicago, R.I. & P. Ry. Co. v. State (1932), 158 Okl. 57, 12 P.2d 494. In Kingwood Oil Company v. Hall-Jones Oil Corporation (1964), Okl., 396 P.2d 510, which case was cited and followed in Merritt v. Corporation Commission (1968), Okl., 438 P.2d 495, we pointed out:

"52 O.S.1961 § 87.1, does not confer upon the Corporation Commission jurisdiction to try an action for damages sounding in tort."

And,

"The District Court has jurisdiction in all cases, civil or criminal, except where exclusive jurisdiction is conferred on some other court by the Constitution or by statute."

In the body of that opinion, on page 513, we pointed out,

"It is well settled that the Corporation Commission is a tribunal of limited jurisdiction, and that it has only such jurisdiction and authority as is expressly or by necessary implication conferred upon it by the constitution and statutes of this state. Southwestern Light and Power Co. v. Elk City (1941), 188 Okl. 540, 111 P.2d 820; * * * (and other cases) * * *."

We have held that the Corporation Commission is without authority to hear and determine disputes between two or more private persons or entities in which the public interest is not involved. Gibson v. Elmore City Telephone Co. (1966), Okl., 411 P.2d 551.

We think, from even a casual reading of the Commission's Order No. 62,532, that it represents that body's option as to the legal effect upon the rights of Southern Union of that company's acts when it drilled its well into and tested the affected horizons and then subsequently plugged the well as a dry or an unprofitable well. While such an order could perhaps be valid if it was necessarily incident to the exercise of the statutory powers of the Corporation Commission to "prevent or assist in preventing (waste)," or, to protect the correlative rights of interested parties in a common source of oil and/or gas, such was not the intended, nor was it in fact, the effect of the Commission's Order No. 62,532. Because the latter order was not expressly nor by necessary implication authorized by either the Constitution or the statutes of Oklahoma, the same was void as beyond the power of the Commission to enter.

We make no determination in this proceeding as to the merits of the controversy between the two private companies.

■ The defendants in error suggest that this appeal should be dismissed, as moot, because, subsequent to the entry of the Commission's Order No. 62,532, the Commission, on application of Anadarko (as the owner of an oil and gas lease or leases covering the West Half of the Southwest Quarter of this Section 14), entered its Order No. 63,108, in which, the Commission found that subsequent development in the area covered by such orders disclosed that a portion of this Section 14 is not underlain by the Basal Cherokee common source of supply and that the portion of that formation which underlies this Section 14 is predominately productive of oil and that one well would adequately, efficiently and economically drain the recoverable hydrocarbons from 80 acres in that common source of supply. The Commission then amended its prior 640-acre drilling and spacing orders so as to delete this Section 14 therefrom and to establish 80-acre drilling and spacing units in that section. They argue that, even if this court did hold herein that the Commission's Order No. 62,532 was erroneous, the pooling order (No. 53,163) would, because

of this latest order, no longer have any force or effect and the owner of the leasehold interest in any such 80-acre drilling and spacing unit could not be required to share the production from such drilling and spacing unit with the owners of leases covering any other land in that section.

In order to determine that the Commission's latest order (No. 63,108) rendered moot the issues before this court we would, of course, have to determine that the said later order was itself valid and effective—an issue which is not presented in this appeal and which we are not authorized to decide at this time.

Our decision in this matter is limited to determining that the Corporation Commission did not have jurisdiction to enter its order No. 62,532 for the reasons herein assigned. That order is vacated.

IRWIN, C. J., and DAVISON, BLACK-BIRD, JACKSON and McINERNEY, JJ., concur.

BERRY, V. C. J., and WILLIAMS and HODGES, JJ., dissent.

BERRY, Vice Chief Justice (dissenting).

I am compelled to express my disagreement with the view of the majority.

The facts are neither involved nor in dispute. Based upon Southern's application Eason's leasehold was force pooled. The order (No. 53163) granted participation alternatively by proportionate payment of drilling costs, or acceptance of $35.00 per acre compensation in lieu of participation. Eason elected the latter alternative. The well drilled through the named horizons was non-productive, plugged and abandoned. Thereafter, as this Court was advised on oral argument, Eason saw fit to continue payment of rentals.

Approximately two years later new activity in the area provoked controversy as to extent of the interest Southern acquired under the forced pooling order. Eason applied to the Commission for determination as to Southern's right to proceed further under the original order (No. 53163) and for determination of the parties' rights in the horizons named in the order.

From the record it becomes obvious a serious question existed as to extent of the interest acquired by Southern in Eason's leasehold. This, in turn, led Eason back to the Commission for interpretation as to whether effectiveness of the order had terminated, or whether either party was bound or had further interest in the provisions.

Correctness of the majority's conclusion that the Commission cannot adjudicate issues involving vested rights, which might have accrued as the result of the forced pooling order, cannot be questioned. Unquestionably the force of order No. 53163 vested substantive rights in property holders. The issue, however, is not whether the Commission's order for forced pooling of Eason's leasehold was a proper exercise of police power constitutionally authorized. The real issue simply is whether the Commission may construe or interpret a prior order without initially determining necessity for clarification was provoked by *additional*, or *necessary*, exercise of the police power.

The instant matter raises no issue concerning constitutionality or improper exercise of police power inhering in the forced pooling order. Neither is there question concerning the Commission's lack of jurisdiction to adjudicate matters which involve private litigants, or are not of public concern. Under these circumstances Southern's insistence that Youngblood v. Seewald, 10 Cir., 299 F.2d 680, should control is not persuasive. Our basic concern is only whether interpretation or clarification of a prior, unappealed order involves adjudication of vested property rights of individuals.

The original order was based upon Southern's application and granted the relief sought. Forced pooling of specified horizons was ordered, without recognition of correlative matters or equities which ultimately might be involved under variant circumstances. It is readily apparent argument advanced as to equities of the situa-

tion does not support one party's position to exclusion of the other.

In Cabot Carbon Co. v. Phillips Petroleum Co., Okl., 287 P.2d 675, this Court recognized the Commission's authority to clarify previous orders under the plain wording of the statute, now 52 O.S.1961 § 112. And, we specifically declared this power to clarify a prior order could be exercised without involving the exclusive province of the courts.

As in Cabot, supra, Southern's principal argument is that the Commission's order (No. 62532) changed the original order by destroying rights already vested under No. 53163. This conclusion is predicated upon the assumption grant of the forced pooling order, for the horizons specified in the application, accomplished a forced "sale" of Eason's entire leasehold without possibility of considering other factors. It is my view order No. 62532 did no more than clarify the Commission's original intention when the forced pooling order was entered. For this reason I am convinced the Commission did not adjudicate an issue of title, and the clarifying order should be affirmed.