2010 OK 3

Mark ROGERS, Terry O'Rorke and William Wilson, on behalf of themselves and all others similarly situated, Plaintiffs

v.

QUIKTRIP CORPORATION, Love's Travel Stops & Country Stores, Inc., and 7-Eleven, L.L.C., Defendants.

No. 106,684.

Supreme Court of Oklahoma.

Jan. 19, 2010.

As Revised Feb. 4 and March 8, 2010.

Terry W. West, Bradley C. West, and J. Shawn Spencer, The West Law Firm, Shawnee, OK, for the plaintiffs/respondents.

John J. Griffin, Jr., Crowe & Dunlevy, a Professional Corporation, Oklahoma City, OK, for defendant Love's Travel Stops & Country Stores, Inc.

Tristan L. Duncan, Holly Smith, Shook, Hardy & Bacon L.L.P., Kansas City, Missouri and John G. Canavan, Jr., Canavan & Associates, Shawnee, OK, for defendant Quiktrip Corporation.

Mark E. Bialick, David B. Donchin, Katherine Taylor Loy, Durbin, Larimore and Bialick, P.C., Oklahoma City, OK, for Defen-

dant 7–Eleven L.L.C. for defendants/petitioners.[1]

OPALA, J.

¶1 Two questions are pressed for review: (1) Did the trial judge err when he ruled that he had jurisdiction over this cause? and (2) Did the trial judge err when he ruled the defendants had a duty to disclose the presence of fuel additives in the gasoline offered for sale? We answer the first in the negative and latter in the affirmative.

## I.

## THE ANATOMY OF LITIGATION

¶2 In May 2008 Mark Rogers, Terry O'Rorke, and William Wilson (plaintiffs) brought a putative class action against Quiktrip Corporation, Love's Travel Stops and Country Stores, Inc., and 7–Eleven, L.L.C., (collectively called defendants or fuel sellers) urging the latter sold gasoline containing the additive ethanol without disclosing its content in the fuel sold to customers. The plaintiffs contend that defendants' failure to disclose the ethanol content of gasoline constitutes breach of contract, breach of express and implied warranties[2] and a violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 et seq.

¶3 The defendants moved to dismiss the action asserting (1) the petition failed to state a claim upon which relief could be granted and (2) the Oklahoma Corporation Commission (Commission) has exclusive jurisdiction over the dispute. The trial judge denied this motion. He ruled (1) the trial court had jurisdiction to entertain the cause and (2) the plaintiffs' theories of liability may be supported by the duty created by the terms of 52 O.S. § 391.[3] The defendants moved to secure the trial judge's certification of the 4 December 2008 order which denied the defendants' motion to dismiss for immediate interlocutory review.[4] They urge the issues presented affect the entirety of the merits of the controversy and an immediate appeal will advance the ultimate termination of the litigation. The trial judge certified his nonfinal ruling for appeal under the provisions of Supreme Court Rule 1.50.[5] This court granted certiorari to review the certified interlocutory order.

## II.

## STANDARD OF REVIEW

¶4 When reviewing a trial court's dismissal of an action an appellate court ex-

1. Identified herein are only those counsel for the parties whose names appear on the parties' certiorari briefs for immediate interlocutory review.

2. Plaintiffs' cite to 12A O.S. §§ 2–313 and 2–314 of the Uniform Commercial Code.

3. The terms of 52 O.S. § 391 provide:
   It shall be unlawful for a person, firm or corporation, to store, sell, expose for sale or offer for sale, any liquid fuels, lubricating oils, greases or other similar products in any manner whatsoever, which deceives, tends to deceive, or has the effect of deceiving the purchaser as to the nature, quality or identity of the product so sold or offered for sale.

4. The trial judge's order certifying for immediate interlocutory appeal the order denying the motion to dismiss notes the plaintiffs joined the defendants in the request for certification of the order.
   The terms of 12 O.S.2001 § 952(b)(3) provide in pertinent part:
   (b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:

   * * *
   3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal.* * *

5. The terms of Supreme Court Rule 1.50 provide:
   Any interlocutory order not appealable by right under the statutes, which order affects a substantial part of the merits of the controversy, may be brought for review to this Court in compliance with the rules in this Part when the trial judge or the judge's successor has certified that an immediate appeal from that order may materially advance the ultimate termination of the litigation. In the exercise of its statutory discretion this Court may refuse to review a certified interlocutory order. 12 O.S.Supp.1991 § 952, Subdiv. (b)(3).
   * * *

amines the issues de novo.[6] Motions to dismiss are generally viewed with disfavor.[7] The purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim.[8] A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief.[9] When considering a defendant's quest for dismissal the court must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them.[10] A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he (or she) may be entitled.[11] A quest for dismissal should be denied if relief is possible under any set of facts which can be established and is consistent with the allegations.[12] A petition can generally be dismissed only for absence of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory.[13] Our recapitulation of the standards that govern when a court is called upon to rule on a motion to dismiss will guide today's review of this case.

## III.

## THE DISTRICT COURT HAS JURISDICTION OVER THIS CAUSE OF ACTION

■ ¶ 5 The defendants first assert the plaintiffs' claims fall within the exclusive jurisdiction of the Corporation Commission and not of the district court. According to the defendants, the plaintiffs' claims do not deal merely with the adjudication of private rights between individuals. They are an inherent challenge to the public-policy determinations over which the Commission has exclusive jurisdiction.[14] At the bottom of this cause,

6. *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077; *Washington v. State ex rel. Dept. of Corrections*, 1996 OK 139, ¶ 7, 915 P.2d 359, 361; *Indiana Nat. Bank v. State Dept. of Human Services*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375.

7. *Lockhart, supra* note 6, at ¶ 5, at 1078; *Indiana Nat. Bank, supra* note 6, at ¶ 4, at 375.

8. *Zaharias v. Gammill*, 1992 OK 149, ¶ 6, 844 P.2d 137, 138.

9. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Ass'n*, 1997 OK 37, ¶ 9, 936 P.2d 916, 922; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 9, 946 P.2d 662, 665; *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 3, 913 P.2d 1318, 1320; *Washington, supra* note 6, at ¶ 7, at 361.

The terms of 12 O.S.2001 § 2012(B) provide in pertinent part:
Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
* * *
6. Failure to state a claim upon which relief can be granted; ÷ * *

10. *Great Plains Federal Sav. and Loan Ass'n v. Dabney*, 1993 OK 4, ¶ 2 n. 3, 846 P.2d 1088, 1090.

11. *Great Plains, supra* note 10, at ¶ 3, at 1096 (Opala, J., concurring).

12. *Lockhart v. Loosen, supra* note 6, at ¶ 4, at 1077; *Indiana Nat. Bank, supra* note 6, at ¶ 4, at 376.

13. *Lockhart v. Loosen, supra* note 6, at ¶ 5, at 1078; *Indiana Nat. Bank, supra* note 6, at ¶ 4, at 375.

14. In their supplemental brief the defendants cite the following statutes and administrative rules dealing with fuel in support of their claim that the Commission has exclusive jurisdiction over this dispute: 83 O.S. §§ 111, 112 (directing the Commission to promulgate standards, rules and regulations concerning measuring devices for petroleum products); OAC § 165:15–7–2 (deals with the characteristics of gasoline and labeling of measuring devices); 2 O.S. § 11–22(E), (authorizing the Commission to promulgate rules to govern the sale of ethanol and gasoline mixtures); 52 O.S. § 325 (conferring jurisdiction on the Commission to prescribe rules and specifications for safety and quality of fuels and burning oils, including gasoline); OAC § 165:15–1–1 (purpose of this chapter is to provide a comprehensive regulatory program governing the sale and use of gasoline and other fuels); and OAC § 165:15–9–3 (providing that the alcohol content of motor fuel sold at airports for fueling aircraft must be labeled but disclosure of fuel additives for other retail sellers be permissive). For the terms of OAC § 165:15–9–3 see *infra* note 25.

The defendants assert the plaintiffs' claims are within the exclusive jurisdiction of the Commis-

assert the defendants, is whether there existed at that time an industry-wide duty to disclose the ethanol content in motor fuel. They urge the plaintiffs seek legislation to be effected by litigation, in violation of the doctrine of separation of powers. The plaintiffs respond that because this dispute deals with private rights of litigants, not just public rights, the trial judge correctly determined that jurisdiction lies in the district court.[15] To rule otherwise would offend the access-to-court provision of the Oklahoma Constitution.[16]

■ ¶ 6 That the Commission is a tribunal of limited jurisdiction is well established in Oklahoma jurisprudence.[17] It possesses only such authority as is expressly or by necessary implication conferred upon it by the constitution and statutes of Oklahoma.[18] If no Commission jurisdiction stands expressly

conferred or necessarily implied, either by the constitution or by statute, its order would be void. The function of the Commission is to protect the rights of the body politic; private rights and obligations of private parties lie within the purview of the district court.[19] The Commission, although possessing many of the powers of a court of record, is without the authority to entertain a suit for damages.[20]

¶ 7 The Commission is without authority to hear and determine disputes between two or more private persons or entities in which the public interest is not involved.[21] The distinction between public and private rights is not always immediately transparent. Public rights, at a minimum, must arise between the government and others: the liability of one individual to another under the law as defined is a matter of private rights.[22] We

sion because they implicate public interests regarding the marketing of gasoline in Oklahoma rather than purely private rights. (trial judge's language in certifying the order to dismiss for immediate interlocutory appeal, p. 2)

15. The plaintiffs cite to Art. 9, § 18, Okla. Const.; *Chicago, R.I. & P. Ry. v. State,* 1932 OK 467, 12 P.2d 494; and *Burmah Oil & Gas Co. v. Corporation Commission,* 1975 OK 138, 541 P.2d 834, for support of their position that the Commission is without authority to hear and determine controversies between private litigants and purely private matters. The terms of Art. 9, § 18, Okla. Const., provide:

The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; * * *

16. The pertinent terms of Art. 2, § 6, Okla. Const., provide:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

Because of our conclusion, we need not discuss this assertion. The plaintiffs' supplemental brief addresses solely the issue of jurisdiction. They present no argument in support of the second issue on certiorari—defendants' alleged duty to disclose the ethanol content of gasoline.

17. Although the Commission has the authority of a court of record, it has limited jurisdiction. *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, ¶ 4, n. 1, 687 P.2d 1049, 1050, n. 1.

18. *Tenneco, supra* note 17, at ¶ 4, at 1050.

19. *Tenneco, supra* note 17, at ¶ 18, at 1052 (holding the district court has jurisdiction over a lawsuit between interested parties to a forced-pooling order who contracted between themselves concerning the interests created by the contract and where no public issue within the jurisdiction of the Commission was changed or challenged); *Samson Resources Co. v. Corporation Com'n,* 1985 OK 31, ¶ 15, 702 P.2d 19, 22 (holding the Commission did not have jurisdiction under the "correlative-rights" doctrine to resolve a dispute between private parties concerning the appointment of a new unit operator); The Commission's jurisdiction is limited to those controversies where the rights of a public utility and patrons are involved. It has no power or jurisdiction to adjudicate differences between private litigants or purely private matters between a utility and a citizen. *Smith v. Corporation Com'n of Oklahoma,* 1924 OK 386, ¶ 10, 225 P. 708, 709, 101 Okl. 254; *Chicago, R.I. & P. Ry. v. State, supra* note 15, at ¶ 15, at 494.

20. *Samson Resources Co., supra* note 19, at ¶ 18, at 23.

21. *Southern Union Production Co. v. Corporation Com'n,* 1970 OK 16, ¶ 14, 465 P.2d 454, 458 (citing *Gibson v. Elmore City Telephone Co.,* 1966 OK 30, ¶ 9, 411 P.2d 551, 553–54).

22. *Tenneco, supra* note 17, at ¶ 17, at 1053 (quoting *Northern Pipeline Construction Company v.*

have also held questions in an action concerning the relationship of private parties, their duties, rights and obligations, and the existence of liability for the breach of such duties to be matters particularly with the province of the district court.[23]

¶8 The plaintiffs' claims which stand presented here are of a private nature. They urge the defendants had both a contractual duty and a duty under the Oklahoma Consumer Protection Act to disclose the ethanol content of their fuel. These issues—the duties and obligations of the parties and the liability that exists for the breach of such duties—deal with private rights between these private parties. That the plaintiffs' claim is a putative class action alters neither the parties' nor the action's classification. Moreover, the plaintiffs seek compensation for the breach of these asserted duties. The Commission has no authority to award damages. This dispute is hence beyond the Commission's jurisdiction. It properly rests in the district court.

*Marathon Pipe Line,* 458 U.S. 50, 70, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).

**23.** *Samson Resources Co., supra* note 19, at ¶ 18, at 23.

**24.** For the text of 52 O.S. § 391 see *supra* note 3.

**25.** The terms of 17 O.S. Supp.2003 § 620 provide:

Except as otherwise provided in this section, *retail facilities that sell motor fuel shall not be required to post information regarding fuel additives on the motor fuel dispenser or anywhere else on the premises of the facilities.* Motor fuel sold at regional or smaller airports in the state for fueling aircraft shall be labeled with the percent of alcohol, if any, in the fuel. The Corporation Commission shall promulgate rules consistent with the provisions of this section. (emphasis supplied)
The terms of OAC 165:15–7–2(d) have defined ethanol as a fuel additive. The pertinent terms provide:
(d) Additives. Ethanol, MtBE or TAME added to gasoline as a component must not exceed concentrations permitted by the United States Environmental Protection Agency. * * *
The defendants further assert that the terms of OAC 165:15–9–3 give further support to their argument. The pertinent text provides:

## IV.

## BECAUSE THE TERMS OF 17 O.S. Supp. 2003 § 620 CONTROL THIS CONTROVERSY THE DEFENDANTS HAD NO DUTY BEFORE THE TERMS OF 52 O.S. Supp.2008 § 347 BECAME EFFECTIVE TO DISCLOSE THE ETHANOL CONTENT OF THEIR MOTOR FUEL

¶9 The defendants next assert the trial judge incorrectly determined that the provisions of 52 O.S. § 391[24]—whose terms provide that it is unlawful for an entity to sell any liquid fuels which deceive the purchaser concerning the nature, quality or identity of the product sold—imposed a duty on sellers to disclose the ethanol content of their fuel. They rely on 17 O.S. Supp.2003 § 620[25] whose terms specifically provide that sellers of motor fuel are not required to post information concerning the presence of fuel additives. According to the defendants, they were under no duty to disclose the content of fuel additives before 1 July 2008 when the terms of 52 O.S. Supp.2008 § 347[26] became effective. In absence of any duty to provide

Motor fuel sold at airports for fueling aircraft must be labeled with the percent of alcohol in the fuel, if any. *At all other retail facilities the retailer may post* on the dispenser or elsewhere on the premises any information regarding the fuel's additives which the retailer deems appropriate to inform customers. (emphasis supplied)
This regulatory enactment, as amended, was effective 7 January 2006.

**26.** The plaintiffs filed their action in the district court on 27 May 2008. The terms of 52 O.S. Supp.2008 § 347, effective 1 July 2008, require the disclosure of ethanol in motor fuels. The pertinent terms provide:
A. No person shall sell or offer for sale motor fuel from a motor fuel pump supplied by a storage tank into which motor fuel that contains a mixture of at least one percent (1%) by volume of ethanol or methanol has been delivered within the sixty-day period preceding the date of sale or offer of sale unless the person prominently displays on the pump from which the mixture is sold a label that complies with subsection B of this section.
B. A label as required in subsection A of this section shall:
1. Be displayed on each face of the motor fuel pump on which the price of the motor fuel mixture sold from the pump is displayed;
2. State "Contains Ethanol" or "Contains Methanol", as applicable; * * *

this information, the defendants contend they cannot be held liable for the plaintiffs' asserted claims against them for breach of contract, breach of express and implied warranties and for violation of the Consumer Protection Act, 15 O.S. § 751 *et seq.*

¶ 10 The defendants urge the terms of § 620 are plain and unambiguous. Its provisions preempt any common-law duty or duty under the Consumer Protection Act by providing them in this cause with a safe harbor from liability.[27] Further, even if the § 391 and § 620 terms conflict, application of rules of statutory construction support their position that the latter terms control here. The defendants also urge that because their actions were consistent with the provision of § 620 their due process rights would be violated if the plaintiffs' action is allowed to be pressed further.[28]

¶ 11 The fundamental rule of statutory construction is to ascertain and give effect to legislative intent.[29] That intent is first divined from the language of a statute.[30] If a statute is plain and unambiguous, it will not be subjected to judicial construction but will receive the interpretation and effect its language dictates.[31] Only where the intent cannot be ascertained from a statute's text, as when ambiguity or conflict with other statutes is shown to exist, may rules of statutory construction be invoked.[32] When

possible, different provisions must be construed together to effect a harmonious whole and give intelligent effect to each.[33] An absurd result cannot be presumed to have been intended by the drafters.[34]

¶ 12 A review of the enactments called to our attention reveals no need to resort to canons of construction. There exists no irreconcilable conflict between the § 391 text and the § 620 provisions. The latter's terms explicitly provide that retail facilities shall not be required to post information concerning fuel additives on motor fuel dispensers or elsewhere on the facility premises. These terms make clear that a seller's act of not posting the presence of fuel additives is not to be considered to lie within the ambit of the deceptive practices under § 391. By this result we harmonize and give effect to both statutes. To read the two statutes otherwise would reach an illogical result—that the legislature specifically condoned a deceptive practice upon its passage of § 620. At the time plaintiffs' claims were brought the defendants had no duty to post information that showed the ethanol content in gasoline. The § 391 terms simply do not control this dispute.

¶ 13 Even if there existed an irreconcilable conflict between the terms of § 391 and those of § 620, application of long-

27. The defendants rely on *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 579, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). There some states had statutes which did not require an automobile seller to disclose minor repairs to a vehicle. The court noted that in the absence of a state-court determination to the contrary, a corporate executive could reasonably interpret the disclosure requirements as establishing safe harbors against lawsuits over minor repairs.

28. Elementary notions of fairness enshrined in constitutional jurisprudence dictate that one receive fair notice not solely of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. *BMW, supra* note 27, at 574, 116 S.Ct. 1589; *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, ¶ 11, 979 P.2d 252, 256. Because of today's holding, we need not address this argument.

29. *Yocum v. Greenbriar Nursing Home*, 2005 OK 27, ¶ 9, 130 P.3d 213, 219; *Cooper v. State ex rel. Dep't. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

30. *Yocum, supra* note 29, at ¶ 9, at 219; *Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438, 460; *TXO Production Corp. v. Okla. Corp. Com'n*, 1992 OK 39, ¶ 7, 829 P.2d 964, 969.

31. *Yocum, supra* note 29, at ¶ 9, at 219; *Ross v. Peters*, 1993 OK 8, ¶ 9, n. 17, 846 P.2d 1107, 1119, n. 17; *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20.

32. *Yocum, supra* note 29, at ¶ 9, at 219; *Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272, 276.

33. *Villines v. Szczepanski*, 2005 OK 63, ¶ 9, 122 P.3d 466, 471; *McNeill v. City of Tulsa*, 1998 OK 2, ¶ 11, 953 P.2d 329, 332.

34. *Ashikian v. State ex rel. Oklahoma Horse Racing Com'n*, 2008 OK 64, ¶ 15, 188 P.3d 148, 156; *Oklahoma Alcoholic Beverage Control Bd. v. Burris*, 1980 OK 58, ¶ 13, 626 P.2d 1316, 1319.

standing canons of statutory construction reveal the latter provision would control here. Two well-settled rules of construction are instructive here. First, where a matter is addressed by two statutes—one specific and the other general—the specific statute, which clearly includes the matter in controversy and prescribes a different rule, governs over the general statute.[35] Second, more recently-enacted legislation controls over earlier provisions.[36] The legislature first enacted § 391 in 1933 to deal with deceptive sales of petroleum products. The terms of § 620, which deal specifically with the required posting of information concerning fuel additives by retail sellers of motor fuel, were enacted in 2003. Giving effect to the most recent expression of the legislative will and allowing the specific statute to control over the more general one compels us to hold that § 620 should govern this controversy.

¶ 14 We note that the terms of 52 O.S. Supp.2008 § 347[37]—the legislature's most recent enactment that deals with the sale and labeling of motor fuel containing ethanol—provides further and equally potent support for our conclusion. Its terms, which became effective 1 July 2008, require a motor-fuel seller whose fuel contains a mixture of at least 1% ethanol or methanol to display this information on the pump. Had the legislature intended that the older § 391 terms require sellers to post information concerning fuel additives the latter expression of legislative will would have been utterly superfluous.

¶ 15 **The terms of § 620 control this controversy.** Prior to 1 July 2008 they clearly relieved the defendants of any duty to disclose the ethanol content of the fuel. The plaintiffs' claims for breach of contract and breach of express and implied warranties[38] must hence fail.

¶ 16 Lastly, the plaintiffs' claim the defendants' failure to disclose the ethanol content in their fuel was a deceptive and unfair trade practice in violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 et seq.[39] Although the trial judge ruled the § 391 terms supported a duty by defendants to disclose this information, the § 620 terms clearly control over any general language contained in the Consumer Protection Act.

---

**35.** *State ex rel. Trimble v. City of Moore,* 1991 OK 97, ¶, 818 P.2d 889, 899 (citing *Southwestern Bell Tel. Co. v. Oklahoma County, Okl.,* 1980 OK 97, ¶ 12, 618 P.2d 915, 919; *Ind. Sch. Dist. No. 1 v. Bd. of Cty. Comm'rs., Okl.,* 1983 OK 123, ¶ 10, 674 P.2d 547, 550).

**36.** The text of 75 O.S.1961 § 22 provides:

If the provisions of any code, title, chapter or article conflict with or contravene the provisions of any former code, title, chapter or article, the provisions of the latter code, title, chapter or article must prevail as to all matter and questions arising thereunder out of the same subject matter.
*Poafpybitty v. Skelly Oil Co.,* 1964 OK 162 ¶ 17, 394 P.2d 515, 515; *Dunlap v. Board of Com'rs of Carter County et al.,* 1922 OK, 120, ¶ 13, 205 P. 1100, 1103, 85 Okl. 295.

**37.** For the pertinent text of § 347 see *supra* note 26.

The plaintiffs' urge the enactment of § 347 codifies the defendants' duty to disclose the ethanol content of their motor fuel. According to the plaintiffs, the legislation requires sellers to disclose what plaintiffs had an existing right to know. (citing to the remarks of the legislation's senate author in plaintiffs' exhibit 1) This argument was not passed on directly by the trial judge. Because it is not reurged by plaintiffs on certiorari, we must view it as abandoned.

**38.** Because of our ruling we need not address the defendants' assertion that the plaintiffs failed to plead the proper notice of the alleged breach of warranty.

**39.** The terms of 15 O.S. § 752(13) and (14) provide:

As used in the Oklahoma Consumer Protection Act:
* * *
(13) "Deceptive trade practice" means misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. * * *
(14)"Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; * * *
The plaintiffs urge defendants' acts violated the terms of 15 O.S. § 753(5) whose terms declare it to be unlawful when a person in the course of business "[m]akes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" * * *

The defendants' actions did not hence violate this Act.[40]

## V.

### SUMMARY

¶ 17 The trial judge correctly ruled that jurisdiction over today's cause lay in the district court. The asserted plaintiffs' claims—for breach of contract, breach of express and implied warranties and for violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*—were bottomed on defendants' alleged duty to disclose the ethanol content of the fuel sold to plaintiffs. A review of the pertinent legislation reveals the terms of 17 O.S. Supp.2003 § 620 must clearly control here. They provide that the defendants, until 1 July 2008 when the terms of 52 O.S. Supp.2008 § 347 became effective, were under no duty to disclose the ethanol content of their fuel. Because at the time the plaintiffs' filed their claim the law imposed no duty on the defendants to disclose the ethanol content of gasoline, they cannot be held liable for breach of contract, breach of express and implied warranties or for violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.* The plaintiffs' petition clearly failed to state a claim upon which relief may be granted.

¶ 18 The trial judge's ruling under review is affirmed in part and reversed in part; the cause is remanded for further proceedings to be consistent with this pronouncement.

¶ 19 EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WINCHESTER, COLBERT and REIF, JJ., CONCUR.

¶ 20 WATT, J., NOT PARTICIPATING.

40. The defendants also urged the terms of 15 O.S. § 754 exempt them from liability under the Consumer Protection Act. Its terms apply to "actions or transactions" that are regulated under laws administered by any regulatory body acting pursuant to statutory authority of the state. The trial judge did not rule on this theory and the defendants did not re-urge it here.