2012 OK 68

**SAMSON RESOURCES COMPANY,**
**Plaintiff–Appellant,**

v.

**NEWFIELD EXPLORATION**
**MID–CONTINENT, INC.,**
**Defendant–Appellee.**

**No. 108,430.**

Supreme Court of Oklahoma.

July 3, 2012.

---

2. ABLE Commission as of 1–25–2010

3. U.S. Const. amend. XIV, § 1.

4. *Coalition for Equal Rights, Inc. v. Ritter,* 517 F.3d 1195 (10th Cir.2008).

Michael E. Smith, Sharon T. Thomas, Hall, Estill, Hardwick, Gable, Golden & Nelson P.C., Oklahoma City, OK, for Plaintiff–Appellant.

Gregory L. Mahaffey, Mahaffey & Gore, P.C., Oklahoma City, OK, for Defendant–Appellee.

GURICH, J.

### Facts & Procedural History

¶ 1 In August of 2009, Samson Resources Company owned oil and gas leases covering

87.78 mineral acres in Roger Mills County, Oklahoma, including the Schaefer Lease. The Schaefer Lease covered 70 net acres in the Southwest Quarter of Section 28 and had a three-year primary term that ended on November 22, 2007. If drilling operations were commenced by the end of the primary term, the lease would continue so long as such operations continued. If drilling operations were not commenced by the end of the primary term, the lease would expire.

¶ 2 On August 2, 2007, Newfield sent a letter to Samson, proposing to drill a well in Section 28. The estimated cost of the well was over $8.5 million dollars. On August 9, 2007, Newfield filed an application with the Commission, seeking to force pool the interests of Samson and other owners in Section 28.[1]

¶ 3 On October 4, 2007, Samson sent a letter to Newfield offering to enter into an agreement regarding Newfield's proposal to drill a well in Section 28 and Newfield's force pooling application.[2] Newfield did not accept Samson's proposal. Newfield's force pooling application was protested and set for hearing on December 12–14, 2007. Samson decided to take no action regarding the Schaefer Lease and allowed it to expire at the end of its term on November 22, 2007.[3]

¶ 4 Before the Schaefer Lease expired, Newfield began dirt work in the Southwest Quarter of Section 28, perpetuating the Schaefer Lease. According to Samson, Newfield concealed the dirt work from Samson, obtained a drilling permit from the Commission on November 27, 2007, and spudded a well known as the Miss Carol 1H–28 on December 1, 2007. Because Samson was allegedly unaware of Newfield's actions and believed the Schaefer Lease had expired, it did not appear at the December 12–14, 2007 hearing on Newfield's force pooling action.

¶ 5 The Commission's pooling order issued on February 21, 2008, Order No. 550310, did not disclose that Newfield had already commenced drilling the Miss Carol Well in Section 28 or that it had taken any action that might have perpetuated the Schaefer Lease. The pooling order, drafted by Newfield, stated that Newfield was "proposing" to drill a well in Section 28 and required Newfield to commence drilling the well within 180 days. It also required owners to elect whether to participate and pay or whether to accept a cash bonus. Believing it owned only 17.78 mineral acres, Samson elected, by letter on February 26, 2008, to participate to the full extent of its interest. On March 10, 2008, Samson sent Newfield a check in the amount of $285,999.63, representing Samson's prepayment for its 17.78 acres. A Newfield landman treated Samson's payment as an election to participate to the extent of all its interest and did not compare the prepayment amount against the respective amounts of working interest acreage in the unit.

¶ 6 Newfield sent an e-mail dated April 14, 2008, to Samson that informed Samson that Newfield had commenced operations prior to the expiration of the Schaefer Lease. Newfield's e-mail stated that Samson had underpaid well costs and that an election to participate with 87.78 acres would require prepayment of $1,411,982.45. Samson responded by e-mail on the same date, informing Newfield its intent was only to elect its 17.78 acres. On April 28, 2008, Samson filed an Application to Determine Election Pursuant to Pooling Order 550310 with the Commission. Samson sought to have its election to participate in the Miss Carol well limited to 17.78 acres rather than 87.78 acres.

¶ 7 After an administrative hearing at the Commission, the Administrative Law Judge determined that Samson's timely election to participate only covered 17.78 acres of its

---

**1.** Cause CD No. 200705396.

**2.** Samson proposed, among other terms, that it be provided a deferred election under which Newfield would provide notice of intent to spud a well at least thirty (30) days prior to spudding the well, and Samson would have fifteen (15) days to elect one of the options provided for in the pooling order. Samson also proposed that if

it elected to participate in the drilling of the well that rather than being required to prepay its estimated share of the costs of drilling and completing the well it be allowed to pay actual well costs on a monthly basis, as they were incurred.

**3.** Without the Schaefer Lease, Samson only owned 17.78 mineral acres in Section 28.

interest and that Samson accepted the cash bonus as to its remaining 70 acres. The Oil and Gas Appellate Referee reversed the ALJ's determination, finding that the ALJ improperly relied on actions *which occurred prior to the issuance of the pooling order.* The Commission issued Order No. 567706, which adopted the Referee's report, reversed the ALJ, and declared that Samson had elected to participate to the full extent of its 87.78 acre interest in the unit. The Commission found Samson made a "unilateral mistake" when it elected to participate to the full extent of its interest. Samson appealed the Commission's order to the Court of Civil Appeals, which affirmed. This Court denied certiorari review on June 28, 2010 (Samson I).

¶ 8 Before COCA issued its opinion in Samson I affirming the Commission, Samson filed an action in the District Court of Roger Mills County, alleging actual fraud, deceit, intentional and negligent misrepresentation, constructive fraud, and breach of duty as operator. Samson also alleged Newfield's actions amounted to extrinsic fraud on the Commission, rendering Pooling Order No. 550310 invalid as to Samson's working interest attributable to the 70–acre Schaefer Lease.

¶ 9 Newfield filed a 12 O.S. § 2012(B)(1) motion to dismiss for lack of subject matter jurisdiction, arguing that Samson's petition was an impermissible collateral attack on a valid Commission order. After reviewing briefs and exhibits and holding a hearing on the motion, the trial court dismissed Samson's petition, finding that Samson's petition and causes of action were an impermissible collateral attack upon a final order of the Commission. Samson appealed, and COCA

affirmed, treating the dismissal as a summary judgment because the parties attached evidentiary materials to their pleadings. Samson petitioned this Court for certiorari review, and we granted review on June 20, 2011.

### Standard of Review

¶ 10 The subject of this appeal is Newfield's 12 O.S. § 2012(B)(1) [4] motion to dismiss, which was granted by the trial court. The purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim. *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 4, 230 P.3d 853, 856. As such, whether a claim should have been dismissed for lack of subject matter jurisdiction is a question of law this Court reviews de novo. *Id.*

### Analysis

¶ 11 Samson first argues that its claims should not have been dismissed by the trial court because only the trial court had jurisdiction to hear the claims asserted.[5] We find this argument persuasive. The Commission oversees the conservation of oil and gas, and its jurisdiction is limited to the resolution of *public rights. Tucker v. Special Energy Corp.,* 2008 OK 57, ¶ 9, 187 P.3d 730, 733. Public rights are involved when "a unitization order, pooling order, or order setting the allowables on the unit's well" affects "the correlative rights of all mineral rights owners in [a] common source of supply [in a] unit." *Id.* (internal quotations omitted). The Commission does not have jurisdiction over private rights and does not have jurisdiction to hear and render judgments in an action for

---

4. 12 O.S. § 2012(B)(1) provides:

    B. How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

    1. Lack of jurisdiction over the subject matter.

5. Samson also argues that COCA should not have converted the motion to dismiss into a motion for summary judgment. We agree. The procedure

converting a motion to dismiss into a motion for summary judgment when matters outside the pleadings are presented applies only to motions to dismiss for failure to state a claim upon which relief can be granted. 12 O.S. § 2012(B) ("If, on a motion asserting the defense *numbered 6* ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment.") (emphasis added).

damages sounding in tort. *Rogers,* 2010 OK 3, ¶ 6, 230 P.3d at 857. Questions in an action concerning the relationship of private parties, their duties, rights and obligations, and the existence of liability for the breach of such duties are matters particularly within the jurisdiction of the district courts. *Id.* ¶ 7, 230 P.3d at 858.

¶ 12 In its petition, Samson claimed that Newfield owed it a duty and that Newfield breached that duty by failing to disclose certain facts to Samson. Samson alleged Newfield's actions amounted to actual fraud, deceit, and intentional misrepresentation, entitling Samson to actual damages, including the amounts Samson paid or is required to pay Newfield regarding the Schaefer Lease. Alternatively, Samson argued these actions amounted to constructive fraud and negligent misrepresentation, entitling it to actual, consequential, incidental, and special damages. Finally, Samson claimed in its petition that as the operator of the well Newfield owed Samson a duty of good faith and full and fair disclosure. Samson claimed Newfield breached this duty, entitling Samson to actual and punitive damages. In this case, Samson's claims sound in tort and are of a private nature. Therefore, the trial court erred by sustaining Newfield's motion.

¶ 13 Newfield also argues that Samson's claims are precluded because Samson had a full and fair opportunity to litigate the issues in the prior Commission action. The limited record on appeal does not support COCA's finding that Samson's claims are precluded because it is clear that the Order of the Commission was not based upon actions that occurred prior to the issuance of the pooling order.[6] The trial court dismissed the action before either party had the opportunity below to fully address whether Samson's claims, or any factual or legal issues in support of those claims, were precluded by the Commission proceeding.[7]

¶ 14 Finally, Samson argues that the pooling order including Samson's working interest attributable to the 70–acre Schaefer Lease is invalid due to Newfield's extrinsic fraud on the Commission. Neither the trial court nor COCA considered the issue of extrinsic fraud. However, the pooling order became a valid and final order of the Commission when this Court denied certiorari review in Samson I. The pooling order may not be attacked on remand on the basis of extrinsic fraud. *See* Okla. Const. art. IX, § 20; 52 O.S. § 111; *Mullins v. Ward,* 1985 OK 109, n. 7, 712 P.2d 55, 59 n. 7.[8]

6. *See* Defendant's Motion to Dismiss, Ex. A at 2. The Order of the Commission states: "[T]he Corporation Commission is called upon to *clarify Paragraph 3A of Pooling Order No. 550310* .... The language of the Pooling Order is clear. It is apparent that under the Pooling Order a respondent not only had to elect to participate within the 15 days of the date of the Order, but within 20 days of the date of the Order, the respondent had to either pay such owner's proportionate part of the actual cost of the well covered thereby or secure or furnish security for such payment satisfactory to the Applicant. Thus, under the Rules of Construction, especially the Plain Meaning Rule, the focus is whether or not Samson's election and payment within 20 days of $285,999.63 as payment for cost for the Carol well satisfied the terms of the Pooling Order." *Id.* (emphasis added).

7. "A party asserting issue preclusion bears the burden of establishing that the factual issue to be precluded was actually determined in the prior proceeding." *Wagner & Brown v. Ward Petroleum Corp.,* 876 F.Supp. 255, 259 (W.D.Okla. 1994) (citing *Anderson v. Falcon Drilling,* 1985 OK 13, ¶ 16, 695 P.2d 521, 526). "[W]here a defendant seeks to apply a prior judgment in one case to matters arising in another case on a different claim, 'the inquiry is whether the question of fact in issue in the latter case is the question of fact actually determined in the former action....' " *Id.* (quoting *Runyan v. City of Henryetta,* 1958 OK 3, ¶ 8, 321 P.2d 689, 693).

8. None of the cases cited by Samson stand for the proposition that a Commission order can be invalidated by a district court for extrinsic fraud. *Dowell v. Boyer,* 2000 OK CIV APP 29, 998 P.2d 206, involved a plaintiff creditor attacking a final divorce decree as a fraudulent transfer under the Uniform Fraudulent Transfer Act; *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, 987 P.2d 1185, involved a motion to vacate a district court judgment under 12 O.S. § 1031; *Barrett v. Barrett,* 1994 OK 92, 878 P.2d 1051, involved an attack on a tribal court divorce decree allegedly procured by fraud; and *Muncrief v. Mobil Oil Co.,* 421 F.2d 801 (10th Cir.1970), involved an attack on a probate proceeding based on an allegation of extrinsic fraud. Additionally, allegations of intrinsic fraud during a Commission proceeding must be heard before the Commission. *Leck v. Continental Oil Co.,* 1989 OK 173, ¶ 22, 800 P.2d 224, 230. The district court does not have sub-

### Conclusion

¶ 15 Samson's claims for damages sounding in tort were beyond the Commission's jurisdiction, and the district court in this case was the proper tribunal for Samson to bring its claims. While we express no view on the merits of Samson's claims, the district court erred by dismissing the case for lack of subject matter jurisdiction. The trial court's order granting Newfield's Motion to Dismiss is reversed.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; MATTER REMANDED FOR FURTHER PROCEEDINGS**

¶ 16 COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COMBS, GURICH, JJ.—CONCUR.

¶ 17 REIF, J.—DISSENTS.

¶ 18 TAYLOR, C.J.— NOT PARTICIPATING.

ject matter jurisdiction to hear allegations of intrinsic fraud committed during Commission proceedings. *Id.*