OSCN Found Document:STATE ex rel. PRUITT v. NATIVE WHOLESALE SUPPLY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 STATE ex rel. PRUITT v. NATIVE WHOLESALE SUPPLY
2014 OK 49
Case Number: 111985
Decided: 06/10/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 49, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL 
RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA, ex rel. E. SCOTT PRUITT, ATTORNEY GENERAL OF 
OKLAHOMA, Plaintiff/Appellee,
v.
NATIVE WHOLESALE SUPPLY, a Corporation 
chartered by the Sac and Fox Tribe of Oklahoma, Defendant/Appellant.

ON APPEAL FROM THE DISTRICT COURT
IN OKLAHOMA 
COUNTY

¶0 The Attorney General initiated this proceeding against Native Wholesale 
Supply alleging violations of the Oklahoma Master Settlement Agreement 
Complementary Act. The district court denied defendant's motion to dismiss for 
lack of personal jurisdiction and granted defendant's motion to dismiss for lack 
of subject matter jurisdiction. Both parties appealed, and in that prior appeal, 
this Court held the State has personal jurisdiction over the defendant based on 
NWS' purposeful availment of the Oklahoma cigarette marketplace and has 
jurisdiction over the subject matter of this suit, the Native-American identity 
of the participants in the distribution channel notwithstanding. State ex 
rel. Edmondson v. Native Wholesale Supply, 2010 OK 58, 237 P.3d 199. On remand to the 
district court for further proceedings, the Honorable Bryan Dixon, presiding, 
entered summary judgment in favor of the Attorney General. Native Wholesale 
Supply appealed. This Court retained the appeal.

DISTRICT COURT'S SUMMARY JUDGMENT AFFIRMED.

E. Clyde Kirk and Ryan R. Chaffin, Assistant Attorneys General, Oklahoma 
City, OK, for appellee, State of Oklahoma ex rel. E. Scott Pruitt, Oklahoma 
Attorney General.
David L. Kearney, Gregory T. Metcalfe, and Paula M. 
Williams, Oklahoma City, OK, for appellant, Native Wholesale Supply.


TAYLOR, J.
¶1 The dispositive issue in this appeal is whether the appellee, the State of 
Oklahoma represented by the Attorney General of Oklahoma (AG), was entitled to 
summary judgment in the amount of $47,767,795.20, as a matter of law. In 
deciding the propriety of summary judgment, we must address two underlying 
questions: 1) whether the district court, on remand, was bound by the facts 
supporting our holdings in the earlier appeal, State ex rel. Edmondson v. 
Native Wholesale Supply, 2010 OK 
58, 237 P.3d 199 (cert. 
denied, Native Wholesale Supply v. State of Okla., 131 S.Ct. 2150, 179 
L.Ed.2d 935 (2011))(Native Wholesale Supply I); and 2) whether the 
district court should have proceeded to a jury trial requested by the appellant, 
Native Wholesale Supply (NWS). We answer the first underlying question in the 
affirmative and the second in the negative. We conclude and hold that the AG was 
entitled to summary judgment in the amount of $47,767,795.20, as a matter of 
law.
I. The Tobacco Settlement and Related Legislation
¶2 In 1998, four of the largest tobacco product manufacturers and forty-six 
states entered into a Master Settlement Agreement (MSA) to settle litigation 
brought by the states to recoup health care expenses resulting from cigarette 
smoking.[1] In 
1999, the Legislature required tobacco product manufacturers who do not join the 
MSA and whose cigarettes are sold in Oklahoma to make annual payments into 
escrow accounts to cover health care expenses resulting from cigarette 
smoking.[2] 1999 
Okla. Sess. Laws, ch. 357(codified at 37 O.S.Supp.1999, §§ 600.21 - 
600.23)(Escrow Statute). In 2004, the Legislature enacted the Master Settlement 
Agreement Complementary Act (Complementary Act) to maintain the integrity of the 
Master Settlement Agreement.[3] 2004 Okla. Sess. Laws, ch. 266 (codified at 68 O.S.Supp.2004, §§ 360.1, et 
seq.).
¶3 The Complementary Act requires all tobacco product manufacturers whose 
cigarettes are sold in Oklahoma to list the cigarette brand names with the AG 
and to certify that the required annual payment into an escrow account has been 
made. 68 O.S.Supp.2004, § 
360.4(A). Each year the AG must publish on its website the list of cigarette 
brand names that may be sold in Oklahoma and the list of tobacco product 
manufacturers who have complied with the Escrow Statute. Id. at § 
360.4(B). The AG's website directory, the Directory of Certified Tobacco 
Manufacturers/Brands Approved for Sale, is accessible to the public. Id. 
The Complementary Act declares that cigarettes not listed on the AG's directory 
are contraband and that it is unlawful for a person to sell or possess for sale 
cigarettes that are not listed on the AG's directory or where the AG's directory 
does not show the cigarette manufacturer has complied with the Escrow Statute. 
Id. at § 360.7. The MSA, Escrow Statute, and Complementary Act guarantee 
a source of compensation for the costs of health conditions associated with 
cigarette smoking and place the financial burden for the medical assistance on 
the tobacco product manufacturers based on the manufacturer's relative market 
share rather than on the State.
II. The Proceedings
¶4 In August of 2006, the AG removed both Seneca brand cigarettes and their 
manufacturer, Grand River Enterprises Six Nations, Ltd., from the AG's 
directory. In 2007 and 2008, NWS caused Seneca cigarettes to be brought into 
Oklahoma knowing that the tobacco product manufacturer did not comply with the 
Escrow Statute or the Complementary Act and that the Seneca cigarette 
manufacturer and Seneca cigarettes were not on the AG's directory.
¶5 In May of 2008, Drew Edmondson, Oklahoma Attorney General, initiated this 
proceeding in Oklahoma County District Court seeking disgorgement and payment to 
the State of all gross proceeds realized by NWS from the sale of contraband 
Seneca cigarettes in violation of the Complementary Act. The petition set forth 
the following allegations. 1) NWS "knowingly sold, transported or caused to be 
transported, or imported or caused to be imported, Seneca cigarettes for sale in 
Oklahoma, thereby transacting business within this state and availing itself of 
the privilege of conducting activities within this state." 2) The Complementary 
Act "requires that a tobacco product manufacturer and its brand families must be 
listed on the Directory of Compliant Tobacco Manufacturers maintained by the 
Oklahoma Attorney General before the cigarettes can be lawfully sold in the 
state." 3) The Complementary Act makes it unlawful for a person to sell, 
distribute, acquire, possess, hold, own, transport, import or cause to be 
imported, cigarettes that the person knows or should know are intended for 
distribution or sale in this state in violation of the Complementary Act. 4) 
"'Seneca' cigarettes are a brand of cigarettes manufactured by Grand River 
Enterprises Six Nations, Ltd." and neither Grand River Enterprises nor Seneca 
cigarettes have been listed on the AG's directory since 2006. 5) Beginning in 
2007, NWS has knowingly and unlawfully sold, distributed, acquired, held, owned, 
possessed, transported, imported or caused to be imported Seneca brand 
cigarettes in this state when it knew or should have known those cigarettes were 
intended for distribution in violation of the Complementary Act.
¶6 In August of 2008, NWS removed the case to federal court asserting 
complete federal preemption of this state-law suit because NWS "is chartered by 
the Sac and Fox Nation, is wholly owned by a member of the Seneca Nation, and 
conducts business on Indian land with Native Americans." The federal court 
concluded the case was improperly removed and remanded it to the state 
court.
¶7 In June of 2009, the state district court granted NWS' motion to dismiss 
for lack of subject matter jurisdiction and denied NWS' motion to dismiss for 
lack of personal jurisdiction. The AG appealed the subject matter jurisdiction 
dismissal and NWS counter-appealed the personal jurisdiction ruling. This Court 
held "that the State has personal jurisdiction over defendant based on the 
Company's purposeful availment of the Oklahoma cigarette marketplace and has 
jurisdiction over the subject matter of this suit, the Native-American identity 
of the participants in the distribution channel notwithstanding." Native 
Wholesale Supply I, 2010 OK 
58 at ¶49, 237 P.3d at 217. Native Wholesale Supply I remanded this 
case to the district court after mandate issued in August of 2010.
¶8 On NWS' motion filed October 25, 2010, this Court suspended the 
effectiveness of the mandate to allow NWS to petition for certiorari review in 
the United States Supreme Court. On April 25, 2011, the United States Supreme 
Court denied NWS' petition for a writ of certiorari to review our opinion in 
Native Wholesale Supply I. Native Wholesale Supply v. State of 
Oklahoma, 131 S. Ct. 2150 (2011). Thereafter, NWS answered the AG's amended 
petition but did not respond to the AG's pending discovery requests and motions. 
In November of 2011, the trial court granted the AG's motion to compel, NWS 
filed for Chapter 11 bankruptcy in the Western District of New York, and the 
state court proceeding was stayed by operation of 11 U.S.C. § 362(a)(1).
¶9 NWS listed three states in the bankruptcy proceeding - California, New 
Mexico, and Oklahoma. The three states, each with a pending suit against NWS for 
violations of their respective complementary legislation, jointly moved to lift 
the automatic stay. On April 26, 2012, the bankruptcy court lifted the stay and 
directed that "information produced by [NWS] during discovery in the bankruptcy 
case shall be treated by the States as satisfying any request for such 
information in the State Litigation." The information NWS turned over to 
Oklahoma included documents showing the cigarette sales and shipping 
transactions between NWS and Muscogee Creek Nation Tobacco Wholesale and Bowen 
Wholesale from 2006 to 2010.
¶10 The state district court case proceeded; and, on August 17, 2012, the AG 
moved for summary judgment. By order dated May 9, 2013, the district court 
sustained the AG's motion for summary judgment, denied NWS' cross-motion for 
summary judgment, and entered judgment "in favor of the plaintiff, State of 
Oklahoma ex rel. E. Scott Pruitt, Attorney General of Oklahoma, in the 
amount of Forty-Seven Million Seven Hundred Sixty-Seven Thousand Seven Hundred 
Ninety-Five Dollars and 20/100 ($47,767,795.20) against the Defendant Native 
Wholesale Supply." By order dated June 17, 2013, the district court denied NWS' 
motion for new trial. NWS appealed the summary judgment and denial of a new 
trial. We retained this second appeal in this protracted litigation.[4]
III. Standard of Review
¶11 Summary judgment is a pretrial procedure available where there is no 
dispute as to the material facts and the inferences that may be drawn from the 
undisputed material facts and where the evidentiary materials establish each and 
every material fact necessary to support the judgment as a matter of law. 
Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. We review a 
summary judgment de novo, without deference to the lower court. 
Id. We review the denial of a new trial for abuse of discretion. Evers 
v. FSF Overlake Assocs., 2003 OK 
53, ¶6, 77 P.3d 581, 584. It 
is an abuse of discretion to deny a new trial where the summary judgment was 
incorrect. Id.
IV. In the post-remand summary proceeding,
the 
district court was bound by the factual conclusions in
Native 
Wholesale Supply I, under the circumstances in this case.
¶12 In resolving the personal jurisdiction issue, Native Wholesale Supply 
I had to determine whether NWS' contacts with this State were sufficient to 
satisfy the Fourteenth Amendment Due Process Clause. Native Wholesale Supply 
I examined NWS' conduct under a "stream-of-commerce theory" pronounced in 
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 293, 100 S.Ct. 
559,565, 62 L.Ed.2d 490 (1980), and tested that conduct by a more stringent 
"stream-of-commerce theory plus" in Asahi Metal Industry Co., Ltd. v. 
Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 
(1987). Quoting from the opinion adopted by four of the Justices in Asahi 
Metal, Native Wholesale Supply I explained the "stream-of-commerce 
theory plus" as follows:

 
 "[A] defendant's awareness that the stream of commerce may or will sweep 
 the product into the forum State does not convert the mere act of placing 
 the product into the stream into an act purposefully directed toward the 
 forum State." A plaintiff must show additional conduct by the defendant 
 directed toward the forum to support the exercise of jurisdiction consistent 
 with the Due Process Clause.
2010 OK 58 at ¶14, 237 P.3d 
at 206 (footnotes omitted) .
¶13 Native Wholesale Supply I reviewed NWS' contacts with Oklahoma in 
accordance with the suggestion in Asahi Metal that there might be 
sufficient contacts with the forum state where the defendant "employed the 
distribution system that brought the product into the forum state." Id. 
at ¶18, 237 P.3d at 207. Native Wholesale Supply I relied upon the 
undisputed testimony of NWS' president for the facts that NWS imported Seneca 
cigarettes from the manufacturer in Canada and sold the imported cigarettes to 
tribal entities in the United States, that sales transactions that would 
ultimately bring cigarettes into Oklahoma began when Muscogee Creek Nation 
Wholesale placed orders with NWS, and that Muscogee Creek Nation Wholesale 
resold the cigarettes to tribal retailers in Oklahoma. It also relied upon the 
undisputed fact that Seneca cigarettes are sold by retailers located on and off 
tribal land in Oklahoma, the undisputed fact that NWS sells a high volume of 
cigarettes to Muscogee Creek Nation Wholesale as part of an ongoing business 
relationship, and the undisputed statistic that the demand for cigarettes by 
members of the Muscogee Creek Nation is a small fraction of the Seneca 
cigarettes NWS sells to Muscogee Creek Nation Wholesale. Based upon these facts, 
Native Wholesale Supply I concluded:

 
 [W]e are looking here at a distributor of a finished product - cigarettes 
 - who causes the product to be delivered to an entity in this state in such 
 quantities that its ultimate destination can only be the general public in 
 this state. While the entity with which Native Wholesale Supply directly 
 deals may operate on tribal land, that tribal land is not located in some 
 parallel universe. It is geographically within the State of Oklahoma. Both 
 entities are engaged in an enterprise whose purpose is to serve the Oklahoma 
 market for cigarettes.
 This is not a case where the defendant is merely aware that its product 
 might be swept into this State and sold to Oklahoma consumers. The sheer 
 volume of cigarettes sold by Native Wholesale Supply to wholesalers in this 
 State shows the Company to be part of a distribution channel for Seneca 
 cigarettes that intentionally brings that product into the Oklahoma 
 marketplace. Native Wholesale Supply is not a passive bystander in this 
 process. It reaps a hefty financial reward for delivering its products into 
 the stream of commerce that brings it into Oklahoma. To claim, as Native 
 Wholesale Supply does, that it does not know, expect, or intend that the 
 cigarettes it sells to Muscogee Creek Nation Wholesale are intended for 
 distribution and resale in Oklahoma is simply disingenuous.
 In short, Native Wholesale Supply does not "merely set its products 
 adrift on a stormy sea of commerce which randomly [sweeps] the products 
 into" Oklahoma. They arrive here by the purposeful collective acts of the 
 Company and the tribal wholesalers with whom it does business. We hence hold 
 that the minimum contacts segment of due process analysis is 
 satisfied.
Id. at ¶¶23-25, 237 P.3d at 208-209 (footnote omitted).
¶14 In resolving the subject matter jurisdiction issue, Native Wholesale 
Supply I reviewed tribal immunity and Indian Commerce Clause jurisprudence 
and examined the pertinent facts accordingly. In deciding Oklahoma courts have 
subject matter jurisdiction in this case, Native Wholesale Supply I 
observed and concluded that:

 
 The transactions at issue in this case are between a Sac and Fox 
 chartered corporation operating on the tribal land of another tribe with a 
 third tribe, the Muscogee Creek Nation. Such transactions are not beyond the 
 reach of state authority.
 In reality, Native Wholesale Supply's transactions with Muscogee Creek 
 Nation Wholesale extend beyond the boundaries of any single "reservation." 
 The cigarettes at issue are manufactured in Canada, shipped into the United 
 States, and stored in a Free Trade Zone in Nevada. Muscogee Creek Nation 
 Wholesale places orders for cigarettes from its "reservation" located within 
 the territorial boundaries of this State to Native Wholesale Supply at the 
 latter's principal place of business on another "reservation" in another 
 State. Delivery of the cigarettes to Muscogee Creek Nation Wholesale 
 requires shipment of the cigarettes from Nevada to the purchaser's tribal 
 land in Oklahoma. The entire process comprising these sales thus takes place 
 in multiple locations both on and off different tribal lands. This is not 
 on-reservation conduct for purposes of Indian Commerce Clause jurisprudence, 
 but rather off-reservation conduct by members of different tribes. . . 
 .
Id. at ¶¶44-45, 237 P.3d at 216 (footnote omitted).
¶15 The above conclusions based upon the undisputed materials in the record 
on appeal were necessary to the resolution of the jurisdictional issues 
presented in Native Wholesale Supply I. In its motion for summary 
judgment post-remand, the AG took the position that the factual conclusions in 
Native Wholesale Supply I were the settled law of the case and binding on 
the district court. NWS responded that jurisdictional facts are not conclusive 
of factual issues on the merits which require a higher standard of proof, that 
it did not waive its right to a jury trial, and that it was entitled to summary 
judgment.
¶16 On summary judgment, NWS did not assert error in the factual conclusions 
in Native Wholesale Supply I nor did it present any additional probative 
evidence to dispute any material fact. In its appeal brief, NWS contends that 
the factual conclusions in Native Wholesale Supply I are obiter 
dicta[5] and 
not binding on the district court because all that is required to establish 
jurisdictional facts is a prima facie showing of defendant's connection 
with the forum states.
¶17 NWS' argument for the procedural protection of a standard of proof higher 
than a prima facie showing is unavailing here. The evidence in the 
appellate record analyzed in Native Wholesale Supply I supported more 
than an inference or a rebuttable presumption.[6] The undisputed probative evidence in 
Native Wholesale Supply I clearly showed the Seneca cigarette brand was 
not listed on the AG's directory after August of 2006 (Thus, Seneca cigarettes 
were contraband in Oklahoma by operation of law.); Seneca cigarettes were 
brought into Oklahoma by the purposeful collective acts of NWS and the 
wholesalers with whom it did business (based upon the NWS' president's 
undisputed affidavit detailing the distribution process); the undisputed 
distribution process that brought Seneca cigarettes to the general public in 
Oklahoma was not on-reservation conduct beyond the reach of this State's 
authority, even though it involved members of several Native American tribes 
located on tribal land; and NWS intentionally distributed Seneca cigarettes to 
be sold in the Oklahoma cigarette market (based upon the sheer volume of Seneca 
cigarettes sold by NWS to wholesalers in this State).
¶18 The settled-law-of-the-case doctrine[7] "operates to bar relitigation of (a) 
issues in a case which are finally settled by an appellate opinion or of (b) 
those the aggrieved party failed to raise on appeal." Smedsrud v. Powell, 
2002 OK 87, ¶13, 61 P.3d 891, 896. Upon remand, the 
parties in this case were free to repress and rehash their claims and defenses 
except for the settled law of the case. "In postremand summary process the 
settled law of the case operates upon all the facts revealed by the probative 
materials before the court at the time the law's settling took place." 
Id. The factual conclusions in Native Wholesale Supply I are 
settled between the parties in this case and were binding on the district court 
on summary judgment.
¶19 There is but one exception to the settled-law-of-the-case doctrine - the 
doctrine does not apply where the prior decision was palpably erroneous and will 
result in gross injustice.[8] On appeal, NWS argues that it was denied a jury 
trial on an undecided question of fact when the district court gave preclusive 
effect to this Court's statements in the prior appeal. Although NWS does not 
specify the undecided question of fact, apparently it was whether NWS knew it 
violated the Complementary Act which we address in part V of this opinion. NWS 
argues that the prior opinion works a manifest injustice but does not support 
this argument with fact or law. This shallow argument does not bring NWS within 
the palpably-erroneous-and-gross-injustice exception to the 
settled-law-of-the-case doctrine.
V. NWS was not entitled to have a jury decide whether 
it knew the sale of Seneca cigarettes violated the Complementary 
Act.
¶20 On appeal, NWS contends that Native Wholesale Supply I concluded 
it had knowledge that the cigarettes would be sold in Oklahoma, but did not 
conclude that it had knowledge that the sales would be in violation of the 
Complementary Act. NWS also contends that it did not know the sales violated the 
Complementary Act[9] and argues that the AG did not offer any evidence 
showing that the cigarette sales violated the Complementary Act.
¶21 In response, the AG asserts that the manufacturer of Seneca cigarettes, 
Grand River Enterprises Six Nations, Ltd., had an escrow deficiency of more than 
Five Million Dollars for 2005 and 2006, and because of its escrow deficiency, 
Grand River Enterprises and Seneca brand cigarettes were removed from the AG's 
directory on August 1, 2006. For these facts, the AG cites to State ex rel. 
Edmondson v. Grand River Enterprises Six Nations, Ltd., 2013 OK CIV APP 58, 308 P.3d 1057 (cert. denied by 
Oklahoma Supreme Court on May 28, 2013, and cert. denied by the United States 
Supreme Court on December 2, 2013, Grand River Enterprises Six Nations, Ltd. 
v. Oklahoma ex rel. E. Scott Pruitt, Attorney General, 134 S.Ct. 683). The 
AG also asserts that the appellate record shows the AG's office 
contemporaneously advised NWS that Grand River Enterprises and Seneca brand 
cigarettes would be removed from the AG's directory on August 1, 2006, and that 
Seneca cigarettes would be contraband in Oklahoma; that from August 1, 2006 to 
August 16, 2010, NWS shipped or sold more than 600 million illegal contraband 
Seneca cigarettes into Oklahoma; and that the settled law of the case is that 
NWS distributed contraband cigarettes to wholesalers in Oklahoma with the 
knowledge, expectation, and intention that the cigarettes would be sold in the 
Oklahoma cigarette market.
¶22 The AG's response is supported by the appellate record. The AG submitted 
an affidavit swearing that prior to removing Seneca cigarettes from the AG's 
directory, the AG's office advised NWS' attorney that Seneca cigarettes would be 
removed and would be contraband in Oklahoma. NWS did not contradict the AG's 
evidence that NWS knew Seneca cigarettes would be removed from the AG's 
directory and would be contraband in Oklahoma.
¶23 NWS argues that each and every pack of the Seneca cigarettes it caused to 
be imported and distributed into Oklahoma was stamped "for reservation sales 
only," proving that it intended the cigarettes were to be sold only on Native 
American reservations. According to NWS, the stamp proves it did not have 
knowledge that the Seneca cigarettes would be sold in violation of the 
Complementary Act. NWS made this claim in the first appeal, and we rejected it 
as simply disingenuous. Native Wholesale Supply I, 2010 OK 58, ¶¶22, 24, 237 P.3d at 
208. With this argument, NWS acquiesces in the fact that it intentionally 
imported and distributed Seneca cigarettes for sale in Oklahoma. The point is 
settled as a matter of law in this case: NWS intentionally and purposefully 
brought contraband Seneca cigarettes into the Oklahoma marketplace. Id. 
¶24, 237 P.3d at 208.
¶24 Further, NWS was not entitled to a jury trial on the unsettled fact 
issues on remand. The Complementary Act does not provide for a jury trial, and 
there is no guaranteed constitutional right to a jury trial in this dispute. The 
United States Constitution[10] and the Oklahoma Constitution[11] preserve the common law 
right to trial by jury in civil cases:

 
 The right to trial by jury, declared inviolate by Article II, Section 19, 
 of the Constitution of Oklahoma, except as modified by the Constitution 
 itself, has reference to the right as it existed in the territories at the 
 time of the adoption of the Constitution, and the right to a jury trial 
 therein referred to was not predicated upon the statutes existing in the 
 territories at that time, but the right as guaranteed under the United 
 States Constitution and according to the course of the common 
 law.
A.E. v. State, 1987 OK 
76, ¶11, 743 P.2d 1041, 1044; 
Maryland Nat. Ins. Co. v. District Court of Oklahoma County, 1969 OK 73, ¶0, 455 P.2d 690, Syllabus by the 
Court, No. 1; Keeler v. State ex rel. Sayer, 1921 OK 197,198 P. 866, Syllabus by the 
Court, No. 1.
¶25 This is not a suit recognized at common law. This is a suit authorized by 
statute to disgorge the gross proceeds NWS gained from the flagrant violation of 
Oklahoma's Complementary Act.[12] This is not a civil action with a guaranteed right 
to trial by jury. NWS was not entitled to have a jury decide whether it knew the 
distribution or sale of contraband Seneca cigarettes violated the Complementary 
Act or to determine the amount of the gross proceeds it realized from the 
distribution of the contraband cigarettes in Oklahoma.
VI. The AG was entitled to summary judgment and
a 
$47,767,795.20 award, as a matter of law.
¶26 In support of its motion for summary judgment, the AG submitted twenty 
evidentiary exhibits. NWS offered only one exhibit, the AG's motion to dismiss 
the first appeal, in support of its cross-motion for summary judgment.[13] NWS did not 
challenge or dispute any of the AG's summary judgment evidentiary material.[14]
¶27 The AG requested the district court to enter summary judgment in its 
favor and to order NWS to disgorge the gross receipts received from the sale of 
Seneca cigarettes as evidenced by Exhibits 5 and 6. Exhibits 5 and 6 were sales 
and shipping records which NWS supplied to the AG in the bankruptcy court in New 
York. The district court inquired whether these two exhibits are "the gospel," 
and NWS' attorney replied in the affirmative. NWS made no effort in the district 
court to dispute the material facts that it imported and directed the 
distribution of Seneca cigarettes into Oklahoma as shown in the sales and 
shipping records included in Exhibits 5 and 6. These two exhibits, according to 
the AG, show NWS' gross receipts from its sales of Seneca cigarettes in 
violation of the Complementary Act totaled at least $47,767,795.20. The AG 
requested a $47,767,795.20 award against NWS to be paid into the Oklahoma 
Tobacco Settlement Endowment Fund.
¶28 The district court entered summary judgment in favor of the AG and 
ordered NWS be disgorged of $47,767,795.20 of its gross receipts. On appeal, NWS 
contends that disgorgement of gross receipts from all sales of cigarettes 
brought into Oklahoma is erroneous and that it should have had an opportunity to 
present evidence showing the significant portion of its gross receipts that were 
attributable to federal excise taxes and the costs of the cigarettes. On summary 
judgment, NWS did have an opportunity to present evidence to the district court. 
However, in responding to the AG's motion for summary judgment, NWS did not 
offer any evidentiary material showing the amount it paid, if any, for federal 
taxes on the cigarettes it imported from Canada; the amount it paid, if any, to 
the cigarette manufacturer; or the amount it paid, if any, for transportation 
and storage of the cigarettes it caused to be imported and shipped into Oklahoma 
during the period from August of 2006 to August of 2010.
¶29 On summary judgment, NWS had a duty to come forward with acceptable 
evidence to controvert the AG's material facts, to raise a substantial 
controversy as to the appropriate monetary award to be imposed, or to otherwise 
oppose the AG's request for disgorgement of gross receipts for violation of the 
Complementary Act.[15] Rule 13, Rules for District Courts, 12 O.S. 2011, 
ch. 2, app. It did not do so, and we will not resurrect procedural rights that 
NWS did nothing to preserve on summary judgment in the district court.
¶30 The certification provisions in the Complementary Act expressly require 
an importer of cigarettes manufactured outside the United States to accept joint 
and several liability with the nonparticipating manufacturer for all escrow 
deposits, penalties, costs, and attorney fees assessed or imposed under the 
Escrow Statute.[16] The parties do not question that the Canadian 
manufacturer of Seneca cigarettes failed to comply with the Escrow Statute and 
the Complementary Act and that, under the Complementary Act, Seneca cigarettes 
were contraband in Oklahoma after August 1, 2006.[17] NWS knew it was importing and 
distributing cigarettes from a manufacturer that did not comply with the Escrow 
Statute and the Complementary Act. NWS did nothing to meet the escrow 
requirements of its foreign cigarette manufacturer. Rather, NWS intentionally 
distributed the contraband Seneca cigarettes into Oklahoma knowing the State was 
not financially protected, as directed in the Complementary Act, from 
shouldering the costs of medical conditions caused by the cigarettes. NWS' 
conduct was unlawful under the Complementary Act:

 
 E. 1. It shall be unlawful for a person to:
 a. sell or distribute cigarettes, or
 b. acquire, hold, own, possess, transport, import, or cause to be 
 imported cigarettes that the person knows or should know are intended for 
 distribution or sale in the state in violation of the Master Settlement 
 Agreement Complementary Act. A violation of the act shall be a 
 misdemeanor.
68 O.S.Supp.2004, § 
360.7(E)(1).
¶31 An order disgorging gross receipts is an authorized remedy for violation 
of the Complementary Act:

 
 G. If a court determines that a person has violated the Master Settlement 
 Agreement Complementary Act, the court shall order any profits, gain, 
 gross receipts, or other benefit from the violation to be disgorged and 
 paid to the State Treasurer for deposit in the Tobacco Settlement Endowment 
 Trust Fund. Unless otherwise expressly provided, the remedies or penalties 
 provided by the Master Settlement Agreement Complementary Act are cumulative 
 to each other and to the remedies or penalties available under all other 
 laws of this state.
Id. § 360.8(G) (emphasis added). In reviewing § 360.8(G), we begin 
with the language, and if it is unambiguous, we assign the plain meaning to the 
words.[18] 
The above highlighted statutory language is not susceptible to more than one 
interpretation.[19] On its face, the plain meaning of the highlighted 
language is clear. Section 360.8(G) is a legislative mandate to the courts to 
order disgorgement of 1) profits, 2) gain, 3) gross receipts, OR 4) other 
benefit from the violation of the Complementary Act. The use of the disjunctive 
"or" indicates the choices are alternatives,[20] and the court has discretion as to 
the amount it will order to be disgorged.
¶32 Section 360.8(G) further provides that the remedies and penalties in the 
Complementary Act are cumulative to each other and to remedies and penalties in 
other laws. A cumulative remedy is one created by statute in addition to another 
remedy that remains in force.[21] A reading of the entire subsection indicates 
legislative intent to provide alternative and concurrent remedies and penalties 
that will secure enforcement of the Complementary Act and deter violations such 
as NWS' conduct. Here, the AG, in his discretion, sought and the district court, 
in its discretion, ordered that NWS disgorge its gross receipts from its four 
years of continuous violation of the Complementary Act.
¶33 We must now determine whether the appellate record establishes each and 
every material fact necessary to support the summary judgment order disgorging 
NWS' gross receipts from the distribution of contraband Seneca cigarettes in 
Oklahoma in the amount of $47,767,795.20, as a matter of law. We have carefully 
examined the appellate record for evidence supporting the $47,767,795.20 summary 
judgment award to the AG, in particular, the sales and shipping records with 
Bowen Wholesale (Exhibit 5) and the sales and shipping records with Muscogee 
Creek Nation Tobacco Wholesale (Exhibit 6). We also examined NWS' invoices to 
Muscogee Creek Nation Tobacco Wholesale (Exhibits 7 and 17).
¶34 Exhibit 5 is a spreadsheet documenting NWS' sales to Bowen Wholesale from 
February 6, 2006 through August 16, 2010, which totaled $8,721,193.80. Exhibit 6 
is a spreadsheet documenting NWS' sales to Muscogee Creek Nation Wholesale from 
February 13, 2007 through August 16, 2010, which totaled $39,726,693.70. 
Exhibits 7 and 17 are the invoices for the transactions between NWS and Muscogee 
Creek Nation Wholesale contained in Exhibit 6. Exhibits 5 and 6 show total gross 
proceeds realized by NWS to be $48,447,887.00. However, excluding from Exhibit 6 
the transactions that occurred prior to August 1, 2006, Exhibits 5 and 6 support 
the AG's claim that NWS had gross receipts which totaled at least $47,767,795.20 
from the sale of contraband Seneca cigarettes for resale in Oklahoma from August 
of 2006 to August of 2010. The evidence is more than sufficient to support the 
judgment of $47,767,795.20. Under the Complementary Act, the settled law of the 
case, and the undisputed material facts on summary judgment, we determine and 
hold that, as a matter of law, the AG is entitled to summary judgment in the 
amount of $47, 767,795.20 for deposit in the Tobacco Settlement Endowment Trust 
Fund.
VII. Conclusion
¶35 The Escrow Statute and the Complementary Act express Oklahoma's public 
policy concerning the harm caused by cigarette smoking and tobacco-related 
illness. Cigarette smoking is a danger not only to our public health, but also 
to the fiscal soundness of this state. 37 O.S.Supp.1999, § 600.23(B). 
Importing and distributing Six Hundred Million contraband Seneca cigarettes into 
Oklahoma contrary to Oklahoma's public policy, NWS has derived a large cost 
advantage and an enormous short-term profit before liability may arise from the 
use of the contraband cigarettes without ensuring that Oklahoma will have a 
source of recovery from NWS or before NWS becomes judgment-proof. Id.
¶36 In deciding that personal jurisdiction over NWS comported with fair play 
and substantial justice, Native Wholesale Supply I evaluated the burden 
on NWS to defend in the forum State, the interests of the forum State in 
obtaining relief, the most efficient resolution of controversies, and the shared 
interest of the several States in furthering fundamental substantive social 
policies. Native Wholesale Supply I, 2010 OK 58 at ¶26, 237 P.3d at 208. 
Native Wholesale Supply I observed:

 
 First, the interest of the State in adjudicating this matter in Oklahoma 
 is obviously very strong. The integrity of the Master Settlement Agreement 
 depends on the ability of the State to enforce its terms. A decision adverse 
 to the state on this issue would permit cigarette manufacturers and 
 wholesalers to evade the MSA by setting up distribution networks whose 
 participants pose as fully independent entities engaging in carefully 
 structured transactions that ostensibly take place outside of the State. In 
 this way, tobacco manufacturers and merchants could purposefully, albeit 
 indirectly, target cigarettes at Oklahoma, reaping the economic benefit of 
 engaging in the tobacco industry while evading the public policy embodied in 
 the MSA and the Complementary Act of shifting the burden of tobacco-related 
 health care costs from the State to the entities who profit from the smoking 
 enterprise.
 Second, defending this suit in Oklahoma does not present an undue burden 
 on Native Wholesale Supply. Any burden upon Native Wholesale Supply from 
 mounting a defense in Oklahoma is clearly minimal in light of the State's 
 uncontroverted allegation that the Company reaps millions of dollars from 
 the sale of Seneca cigarettes to Oklahoma consumers.
 Finally, the states have a collective interest in the efficient 
 resolution of controversies and in furthering fundamental substantive social 
 policies. The courts of this State and only the courts of this State offer 
 the most efficient and rational forum for the resolution of a controversy 
 over the meaning and effect of State statutes governing the allocation of 
 the financial and health-care costs associated with smoking between the 
 public and private sectors.
Id. ¶¶26-29, 237 P.3d at 208.
¶37 Here, NWS purposefully targeted the Oklahoma cigarette market and reaped 
the economic benefit of selling cigarettes in Oklahoma. Defiantly, NWS continued 
to import and distribute contraband Seneca cigarettes into Oklahoma and reap 
millions of dollars from the sale of the contraband cigarettes to Oklahoma 
consumers for more than two years after Oklahoma's chief law enforcer filed this 
suit. NWS may not evade the public policy embodied in the MSA, the Escrow 
Statute, and the Complementary Act and thereby shift the burden of 
tobacco-related health care costs to the State. Disgorging gross receipts that 
NWS, a cigarette importer and distributor, received when it intentionally 
distributed contraband cigarettes into the Oklahoma market in violation of the 
Complementary Act is no more excessive than seizing and forfeiting contraband 
cigarettes from a cigarette distributer or wholesaler.[22] NWS' claim to Eighth Amendment 
protection minimizes the egregiousness of its flagrant disrespect for Oklahoma, 
our laws, and our citizens.
¶38 NWS had gross receipts that totaled at least $47,767,795.20 from the sale 
of contraband Seneca cigarettes for resale in Oklahoma from August of 2006 to 
August of 2010. Based upon the Complementary Act, the settled law of the case, 
and the undisputed material facts on summary judgment, the summary judgment was 
proper, and the district court did not abuse its discretion in denying NWS a new 
trial.

DISTRICT COURT'S SUMMARY JUDGMENT AFFIRMED.

Colbert, C.J.; Reif, V.C.J; and Watt, Winchester, and Taylor, JJ., 
concur.
Kauger, J., concurs in result.
Gurich, J. (by separate writing) dissents.
Edmondson and Combs, JJ., disqualified.

FOOTNOTES

[1] The 
states sued the major tobacco companies to recover their Medicaid costs due to 
tobacco-related disease. The MSA addressed the monetary damages, annual escrow 
payments, and public health issues regarding tobacco use, such as prevention of 
use of tobacco products by youth, advertising, smoking cessation, and education. 
Subsequently, some forty other tobacco product manufacturers have joined the 
MSA. The annual payments and a portion of the proceeds from the settlement are 
held in the Tobacco Settlement Endowment Trust Fund. Okla. Const., art. X, § 
40.

[2] In the 
Escrow Statute, 37 O.S.Supp.1999, § 
600.21, the Legislature made the following findings:
B. The Oklahoma Legislature further finds that cigarette smoking also 
presents serious financial concerns for the State of Oklahoma; that, under 
certain health care programs, the state may have a legal obligation to provide 
medical assistance to eligible persons for health conditions associated with 
cigarette smoking; that those persons may have a legal entitlement to receive 
such medical assistance; and that, under these programs, the State of Oklahoma 
pays millions of dollars each year to provide medical assistance for those 
persons for health conditions associated with cigarette smoking.
1. The Oklahoma Legislature additionally finds that it is the policy of the 
State of Oklahoma that financial burdens imposed on the state by cigarette 
smoking should be borne by tobacco product manufacturers rather than by the 
State of Oklahoma to the extent that such manufacturers either determine to 
enter into a settlement with the state, or are found culpable by the court; and 
that on November 23, 1998, leading United States tobacco product manufacturers 
entered into a settlement agreement, entitled the "Master Settlement Agreement," 
with the state, which obligates these manufacturers, in return for a release of 
past, present, and certain future claims against them as described therein, to 
pay substantial sums to the state (tied in part to their volume of sales); to 
fund a national foundation devoted to the interests of public health; and to 
make substantial changes in their advertising and marketing practices and 
corporate culture, with the intention of reducing underage smoking.
2. The Oklahoma Legislature therefore finally finds that it would be contrary 
to the policy of the State of Oklahoma if tobacco product manufacturers who 
determine not to enter into such a settlement could use a resulting cost 
advantage to derive large, short-term profits in the years before liability may 
arise without ensuring that the state will have an eventual source of recovery 
from them if they are proven to have acted culpably; and that it is thus in the 
interest of the State of Oklahoma to require that such manufacturers establish a 
reserve fund to guarantee a source of compensation and to prevent such 
manufacturers from deriving large, short-term profits and then becoming 
judgment-proof before liability may arise.

[3] 68 O.S.Supp.2004, § 360.2 
provides:
The Oklahoma Legislature declares that violations of Sections 600.1 through 
600.23 of Title 37 of the Oklahoma Statutes threaten the integrity of the Master 
Settlement Agreement as defined in Section 600.22 of Title 37 of the Oklahoma 
Statutes, the fiscal soundness of the state, and the public health. The 
Legislature declares that enacting this act enhances the Prevention of Youth 
Access to Tobacco Act by preventing violations and aiding in the enforcement of 
the Master Settlement Agreement Complementary Act and thereby safeguard the 
Master Settlement Agreement, the fiscal soundness of the state, and the public 
health.

[4] This 
Court granted NWS' motion to file additional briefs in this summary disposition 
appeal over the AG's objection. Rule 1.36(g), Okla. Sup. Ct. R., 12 O.S.2011, 
ch. 15, app. 1. NWS also filed a motion for oral argument to which the AG 
objected. Because oral argument is not essential to an understanding of the 
legal questions presented herein, NWS' motion for oral argument is 
denied.

[5] The 
conclusions in Native Wholesale Supply I were necessary to decide the 
jurisdictional issues presented and were not obiter dicta. Burch v. 
Allstate Ins. Co., 1998 OK 
129, ¶12, 977 P.2d 1057, 
1062-1063; Huston v. Scott, 1908 OK 10, 94 P. 512, Syllabus by the 
Court.

[6] A 
prima facie showing is evidence that establishes a given fact necessary 
to a judgment, but which may be refuted by other evidence. Slides v. John 
Cordes, Inc., 1999 OK 36, 
¶14, 981 P.2d 301, 306.

[7] The 
settled-law-of-the-case doctrine is firmly established. Wellsville Oil Co. v. 
Miller, 1915 OK 483, 150 P. 186, 48 Okla. 386 (Syllabus No. 3, 
"[N]o question open to dispute, either expressly or by implication, decided on 
appeal, will be open for review upon a second appeal between the same parties in 
regard to the same subject-matter."); Handy v. City of Lawton, 1992 OK 111, ¶13, 835 P.2d 870, 873 ( "When Handy I 
was brought, all of the facts about both the scope of the officer's employment 
and the requirements for carrying out his duties were known or could have been 
developed. The sufficiency of those same facts were determined by the Court of 
Appeals in Handy I and may not be questioned on subsequent appeal."); Miller 
Dollarhide, P.C. v. Tal, 2006 OK 
27, ¶8, n. 11, 174 P.3d 559, 
563 (citing In re Estate of Severns, 1982 OK 64, ¶5, 650 P.2d 854, 856, reaffirmed that 
issues settled, or that could have been settled, on appeal will not be subject 
to further litigation between the parties in that case.)

[8] The 
palpably-erroneous exception to the settled-law-of-the-case doctrine is limited 
to extreme circumstances of manifest injustice. Bierman v. Aramark 
Refreshment Services, Inc., 2008 
OK 29, ¶13, 198 P.3d 877, 
881-882; Acott v. Newton & O'Conner, 2011 OK 56, ¶11, 260 P.3d 1271, 1274.

[9] If, by 
this contention, NWS is urging ignorance of the law, we reject it. "It is 
axiomatic, that in most instances, ignorance of the law is no excuse, and every 
person is presumed to know the law." Estes v. ConocoPhillips Co., 2008 OK 21, ¶22, 184 P.3d 518, 526-527(footnote 
omitted).

[10] 
Seventh Amendment, U.S. Const.

[11] 
Art. 2, § 19, Okla. Const.

[12] 
Throughout this litigation, the AG has sought to disgorge NWS' gross proceeds 
realized from the distribution of contraband Seneca cigarettes in Oklahoma 
pursuant to 68 O.S.Supp.2004, § 
360.8(F) and (G). On remand after the first appeal, the basic dispute 
concerned the amount of gross proceeds NWS gained from its flagrant violations 
of the Complementary Act, that is, the money which shall be disgorged and 
deposited into the Oklahoma Tobacco Settlement Endowment Fund for the support of 
the health and well-being of Oklahoma citizens in accordance with § 
360.8(G).

[13] In 
its cross-motion, NWS urged that it was entitled to summary judgment as a matter 
of law because Native American law issues are palpably complex and no one is 
clear on what the law is as evidenced in this case where the trial judge ruled 
that the case is barred by the Indian Commerce Clause and this Court reversed 
the trial court; that NWS and Muscogee Creek Nation met to discuss whether 
"Nation to Nation sales" are subject to state taxation and escrow requirements; 
and that the Tenth Circuit has noted that it is not clear that the state has 
authority to enforce the Complementary Act, citing Muscogee (Creek) Nation v. 
Pruitt, 669 F.3d 1159 (10th Cir. 2012). NWS offered the AG's motion to 
dismiss the first appeal to support the fact that it met with Muscogee Creek 
Nation to discuss "Nation to Nation sales."
We recognize the complexity of Native American law, but that is simply not a 
valid defense to a suit in state court against a Native American. As to "Nation 
to Nation sales," Native Wholesale Supply I held that NWS "was not 
clothed with tribal immunity from suit" as it "operates solely as a private 
business for the personal profit of its owner who happens to be a Native 
American belonging to the Seneca Nation." Native Wholesale Supply I, 2010 OK 58 at ¶33, 237 P.3d at 
210-211. As to federal preemption, Native Wholesale Supply I observed, 
"[t]here is no federal jurisprudence pronouncing Indian sovereignty in the area 
of cigarette distribution and sales, nor have we been directed to any 
congressional enactments reflecting and encouraging tribal self-sufficiency and 
economic development through the distribution and sale of cigarettes." 
Id. at ¶47, 237 P.3d at 216. Finally, Muscogee (Creek) Nation v. 
Pruitt is not on point here. The district court correctly denied NWS' 
cross-motion for summary judgment.

[14] 
NWS' failure to present any evidence would not necessarily prevent it from 
showing an actual controversy as to a material fact issue. Hadnot v. 
Shaw, 1992 OK 21, ¶18, 826 P.2d 978, 984. NWS could show 
the existence of a substantial dispute of a material fact through the AG's 
evidentiary materials. Id. But here, NWS did not challenge the AG's 
evidentiary material or offer any evidence to rebut the AG's evidence.

[15] A 
party responding to summary judgment has an obligation to present some material 
that shows a trial is necessary. Davis v. Leitner, 1989 OK 146, ¶12, 782 P.2d 924, 926.

[16] 68 O.S.Supp.2004, § 360.4(A)(6) 
provides:
In the case of a nonparticipating manufacturer located outside of the United 
States, the certification shall further certify that the nonparticipating 
manufacturer has provided a declaration from each of its importers into the 
United States of any of its brand families to be sold in Oklahoma. The 
declaration shall be on a form prescribed by the Attorney General and shall 
state that such importer accepts joint and several liability with the 
nonparticipating manufacturer for all escrow deposits due, for all penalties 
assessed and for payment of all costs and attorney fees imposed in accordance 
with Sections 600.21 through 600.23 of Title 37 of the Oklahoma Statutes. Such 
declaration shall appoint for the declaration a resident agent for service of 
process in Oklahoma in accordance with Section 360.5 of this title.
Enacted after the time period involved in this case, 68 O.S.Supp.2009, § 360.5-1 imposes joint and several 
liability upon the importer for "deposit of all escrow due, payment of all 
penalties imposed and payment of all costs and attorney fees."

[17] 68 O.S.Supp.2004, § 360.7(B) 
provides
B. Any cigarettes that have been sold, offered for sale, or possessed for 
sale in this state or imported for personal consumption in this state, in 
violation of the Master Settlement Agreement Complementary Act, shall be deemed 
contraband pursuant to the Master Settlement Agreement Complementary Act. Those 
cigarettes shall be subject to seizure and forfeiture as provided by this 
section and all cigarettes so seized and forfeited shall be destroyed as 
provided by this section and not resold.

[18] 
W.R. Allison Enterprises, Inc. v. CompSource Okla., 2013 OK 24, ¶14, 301 P.3d 407, ; Yocum v. 
Greenbriar Nursing Home, 2005 OK 
27, ¶9, 130 P.3d 
213.

[19] 
"The test for ambiguity in a statute is whether the statutory language is 
susceptible to more than one reasonable interpretation." In the Matter of 
J.L.M., 2005 OK 15, ¶5, 109 P.3d 336, 338.

[20] 
Id. 2005 OK 15 at ¶7, 109 
P.3d at 338-339.

[21] 
Goss v. Trinity Sav. & Loan Ass'n, 1991 OK 19, § 14, 813 P.2d 492, 495.

[22] 
Washington v. Confederated Tribes of Colville Indian Reservation, 447 
U.S. 134, 161-162, 100 S.Ct. 2069, 2085 (1980), found that Washington's interest 
in enforcing its taxes on cigarettes justified seizure of the cigarettes in 
transit when the Tribes refused to fulfill collection and remittance obligations 
under state law; and that the off-reservation, en route seizures allow the State 
to police against wholesale evasion of its taxes. Oklahoma Tax Com'n v. 
Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 55, 514, 111 
S.Ct. 905, 912 (1991)(States may enforce taxes on cigarettes from wholesalers by 
seizing unstamped cigarettes off the reservation.). 

 
 


GURICH, J., dissenting:
¶1 In the first appeal in this case, State ex rel. Edmondson v. Native 
Wholesale Supply, 2010 OK 
58, 237 P.3d 199 (Native 
Wholesale Supply I), this Court decided two issues: 1) "Is an Oklahoma court 
a constitutionally sanctioned forum for the exercise of personal jurisdiction to 
adjudicate an alleged violation of a state statute by Native Wholesale Supply, a 
nonresident corporation that claims to have no minimum contacts with Oklahoma?" 
and 2) "Does federal law bar Oklahoma from enforcing the Complementary Act 
against Native Wholesale Supply, a tribally-chartered corporation wholly owned 
by an individual of Native-American ancestry?" Native Wholesale Supply I, 
2010 OK 58, ¶ 1, 237 P.3d at 
203.
¶2 As to the first question, this Court relied on the stream-of-commerce 
theory of personal jurisdiction and found that "Native Wholesale Supply does not 
'merely set its products adrift on a stormy sea of commerce which randomly 
[sweeps] the products into' Oklahoma. They arrive here by the purposeful 
collective acts of the Company and the tribal wholesalers with whom it does 
business. We hence hold that the minimum contacts segment of due process 
analysis is satisfied." Id. ¶ 25, 237 P.3d at 209. As to the second 
question, this Court held the Master Settlement Agreement Complementary Act 
(MSACA) applied to Native Wholesale Supply and that the Indian Commerce Clause 
did not bar enforcement of the Act against Native Wholesale Supply. Id. 
¶¶ 43-45, 237 P.3d at 215-16. This Court did not address the merits of the 
case, i.e., whether Native Wholesale Supply actually violated the MSACA.
¶3 On remand, however, the Attorney General relied on the 
settled-law-of-the-case doctrine and on several statements from this Court in 
Native Wholesale Supply I to convince the trial court that no questions 
of fact were in dispute as to whether Native Wholesale Supply violated the 
MSACA. At issue now in this second appeal is whether the facts relied on by this 
Court in Native Wholesale Supply I in deciding the jurisdictional issues 
were binding on the trial court on remand in determining the merits of the 
case.
The Trial Court Was Not Constrained Under the 
Settled-Law-of-the-Case
Doctrine by Any Factual Findings Made 
by This Court in Native Wholesale Supply I 
¶4 The settled-law-of-the-case doctrine bars relitigation of only those 
issues that have been settled by an appellate opinion. Robert Wheeler Inc. v. 
Scott, 1991 OK 95, ¶ 10, 818 P.2d 475, 479.[1] Native Wholesale Supply 
I only settled that the courts of this state may exercise jurisdiction over 
the non-resident defendant Native Wholesale Supply; Native Wholesale Supply is 
not immune from suit in state court based on tribal immunity; and the Indian 
Commerce Clause does not bar enforcement of the MSACA against Native Wholesale 
Supply. The trial court might have been bound by the factual findings made by 
this Court in Native Wholesale Supply I had the jurisdictional issues 
been intertwined with the merits of the case.[2] However, neither party argued in 
Native Wholesale Supply I that the jurisdictional issues 
were intertwined with the merits of the MSACA claim, and this Court made no such 
finding. "[A] claim based upon a lack of jurisdiction is usually 
considered to be a claim not affecting the merits of the 
controversy."[3]
¶5 Even so, a jurisdictional issue is only intertwined with the merits when 
jurisdiction is "dependent upon an issue that is also an element to the merits 
of the cause of action, and the adjudication of the jurisdictional issue 
necessarily adjudicates a cause of action or defense thereto." Lucas, 2013 OK 14, ¶ 8, 297 P.3d at 383. 
In this case, the adjudication of the jurisdictional issues in Native 
Wholesale Supply I did not adjudicate any elements of the MSACA claim, 
contrary to the Attorney General's assertion.[4] The MSACA provides:

 
 It shall be unlawful for a person to:
 a. sell or distribute cigarettes, or
 b. acquire, hold, own, possess, transport, import, or cause to be 
 imported cigarettes that the person knows or should know are intended for 
 distribution or sale in the state in violation of the Master Settlement 
 Agreement Complementary Act. . . .
68 O.S. Supp. 2004 § 
360.7(E).
In other words, the State must prove in this case that Native Wholesale 
Supply, at the time it sold the cigarettes to the respective wholesalers, 
knew or should have known that the wholesalers intended for the cigarettes to 
be distributed or sold in violation of the MSACA. While some of the facts 
discussed in Native Wholesale Supply I might be relevant in proving 
Native Wholesale Supply's knowledge at the time it sold the cigarettes to the 
wholesalers, intentionally bringing cigarettes into the Oklahoma marketplace 
for purposes of stream-of-commerce theory of personal jurisdiction 
does not equate to knowledge of the wholesalers' intent to 
sell or distribute the cigarettes in violation of the MSACA.[5] 
Even If the Trial Court Was Bound by Factual Findings in 
Native Wholesale Supply I, 
Disputed Questions of Fact Remain as to Whether Native 
Wholesale Supply
Violated the MSACA, Making Summary Judgment 
Improper
¶6 The Attorney General's argument on remand that this Court "affirmatively 
settled that NWS intentionally sold, shipped, and/or caused Seneca cigarettes to 
be shipped into and within Oklahoma" in violation of the MSACA disregards a 
critical element of the MSACA claim.[6] Although Native Wholesale Supply does not dispute 
that cigarette sales took place,[7] the fact that cigarette sales were made does not 
prove Native Wholesale Supply knew or should have known at the time it sold the 
cigarettes to the wholesalers that the wholesalers intended for the cigarettes 
to be distributed or sold in violation of the MSACA.[8] The statute requires 
proof of such knowledge on the part of Native Wholesale Supply, and disputed 
questions of fact remain with regard to this issue.
¶7 The Attorney General argues it is affirmatively settled that the 
transactions between Native Wholesale Supply and Muscogee Creek Nation Wholesale 
are subject to the MSACA. But as Native Wholesale Supply points out, at the 
time of the transactions between 2006 and 2010, it was not settled 
that the transactions were subject to the MSACA. Native Wholesale Supply argued 
in Native Wholesale Supply I that tribal to tribal transactions were 
beyond the reach of state regulatory power, and as such, the transactions with 
Muscogee Creek Nation Wholesale were not subject to the MSACA. Native 
Wholesale Supply I, 2010 OK 
58, ¶ 43, 237 P.3d at 215. The trial court in Native Wholesale Supply 
I agreed with this interpretation of the law and initially dismissed the 
suit finding it was barred by the Indian Commerce Clause. Not until the appeal 
in Native Wholesale Supply I in 2010[9] did this Court conclusively decide 
that the MSACA applied to Native Wholesale Supply and that neither tribal 
immunity nor the Indian Commerce Clause barred enforcement of the MSACA against 
Native Wholesale Supply. So then, how could Native Wholesale Supply have known 
at the time of the transactions that Muscogee Creek Nation Wholesale intended 
for the cigarettes to be distributed or sold in violation of the MSACA when it 
was not clear whether the MSACA even applied to the transactions?
¶8 The Attorney General argues Native Wholesale Supply had knowledge as early 
as 2003 that the transactions with Muscogee Creek Nation Wholesale were 
problematic under the MSACA.[10] But whether or not the State's evidentiary 
materials prove Native Wholesale Supply knew, or should have known, at the time 
it sold the cigarettes to the wholesalers that such entities intended for the 
cigarettes to be distributed or sold in violation of the MSACA is for the trier 
of fact to decide. Summary judgment is proper only when the pleadings, 
affidavits, depositions, admissions or other evidentiary material establish that 
there is no genuine issue as to any material fact. Sullivan v. Buckhorn Ranch 
Partnership, 2005 OK 41, ¶ 
36, 119 P.3d 192, 203. I 
respectfully dissent.[11]

FOOTNOTES

[1] "Where, 
on the judgment's reversal, a cause is remanded, it returns to the trial court 
as if it had never been decided, save only for the 'settled law' of the case." 
Smedsrud v. Powell, 2002 OK 
87, ¶ 13, 61 P.3d 891, 896. 
"The parties are relegated to their prejudgment status and are free to 
re-plead or re-press their claims as well as defenses." Id. 
"The doctrine embodies a call for judicial economy designed to prevent 
'rehashing' of issues in successive appeals." Id. "In postremand summary 
process the settled-law-of-the-case doctrine operates upon all the facts 
revealed by the probative materials before the court at the time the law's 
settling took place." Id.

[2] 
State ex rel. Bd. of Univ. of Okla. v. Lucas, 2013 OK 14, ¶ 8, 297 P.3d 378, 383.

[3] 
Lucas, 2013 OK 14, ¶ 7 
& n.5, 297 P.3d at 383 & n.5 (citing Ricks Exploration Co. v. 
Oklahoma Water Res. Bd., 1984 OK 
73, 695 P.2d 498; Swan v. 
Sargent Indus., 1980 OK CIV APP 
49, 620 P.2d 473 (approved for 
publication by Supreme Court); Samson Res. Co. v. Newfield Exploration 
Mid-Continent, Inc., 2012 OK 
68, 281 P.3d 1278) (emphasis 
added).

[4] In 
Native Wholesale Supply I this Court held that personal jurisdiction over 
Native Wholesale Supply was proper under the stream-of-commerce theory of 
personal jurisdiction. The Court found:
This is not a case where the defendant is merely aware that its product might 
be swept into this State and sold to Oklahoma consumers. The sheer volume of 
cigarettes sold by Native Wholesale Supply to wholesalers in this State shows 
the Company to be part of a distribution channel for Seneca cigarettes that 
intentionally brings that product into the Oklahoma marketplace. Native 
Wholesale Supply is not a passive bystander in this process.
Native Wholesale Supply I, 2010 OK 58, ¶ 24, 237 P.3d at 
208.

[5] At the 
hearing on the motion for summary judgment, the trial court had doubts about the 
Attorney General's settled-law-of-the-case argument but nevertheless granted 
summary judgment to the State:
The Court: What I'm trying to understand is I understand the Supreme Court 
was deciding two issues: One was the personal jurisdiction issue and the other 
was the Indian Commerce Clause.
Mr. Chaffin: Which apply--
The Court: Forget the Indian Commerce Clause. Personal jurisdiction, they 
have made a lot of findings in here, a lot conclusions written by Justice 
Opala--
Mr. Chaffin: Yes.
The Court: --that supports personal jurisdiction, I understand that--
Mr. Chaffin: Yes, sir.
The Court: --does that prove your case?
Mr. Chaffin: The--many of those opinions prove that they had knowledge, that 
it was disingenuous to argue that, that they know--that they have to know it's 
being sold to the general public. There's no other reasonable conclusion.
. . . .
The Court: [I]'d like to make the distinction that they're just doing 
personal jurisdiction, but [the Court] was . . . very broad in what [it] said 
here. I'm bound by that.
Record on Accelerated Appeal, Ex. 8 at 25-26.

[6] 
Record on Accelerated Appeal, Ex. 4 at 14.

[7] Counsel 
for Native Wholesale Supply stated at the hearing on the motion for summary 
judgment:
The issue of whether the MSACA applies to my client has been decided. The 
issue of whether my client has violated the MSACA has not been decided. . . . 
The only way to hook us into the liability here is by this one statute, which 
the cite is 68 O.S. 360.7(E), 
which specifically says, you know, it's unlawful to sell cigarettes that the 
person knows or should know are intended for sale in violation of the Act. 
That's the fact question before you today. Did we sell with knowledge that these 
cigarettes are intended for sale in violation of the Act[?] . . . The fact that 
we made sales is not evidence of our knowledge of the intent of the people we 
sold to, to then violate the Act. And there's no evidence that they have 
presented that demonstrates that particular fact.
Record on Accelerated Appeal, Ex. 8 at 12-13.

[8] It is 
also undisputed that Seneca brand cigarettes have not been listed on the 
Oklahoma Attorney General's Directory since 2006 and have not been approved for 
sale within the state. See Record on Accelerated Appeal, Ex. 3 at 4; 
Record on Accelerated Appeal, Ex. 2 at 11.

[9] The 
record indicates Native Wholesale Supply ceased selling to Muscogee Creek Nation 
Wholesale when this Court's opinion issued in July of 2010. See Record 
on Accelerated Appeal, Ex. 5 at n.2.

[10] 
See Record on Accelerated Appeal, Ex.6 (filed under seal pursuant to 
agreed protective order filed January 8, 2013).

[11] 
Because summary judgment was improper, I would not address whether the trial 
court erred by awarding 100% of the gross receipts of Native Wholesale Supply to 
the State for Native Wholesale Supply's violation of the 
statute.
 
 




 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2013 OK CIV APP 58, 308 P.3d 1057, STATE ex rel. EDMONDSON v. GRAND RIVER ENTERPRISES SIX NATIONS, LTD.
Discussed 1980 OK CIV APP 49, 620 P.2d 473, Swan v. Sargent Industries
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1987 OK 76, 743 P.2d 1041, 58 OBJ 2310, A.E. v. State
Discussed 1989 OK 146, 782 P.2d 924, 60 OBJ 2833, Davis v. Leitner
Discussed 1991 OK 19, 813 P.2d 492, 62 OBJ 790, Goss v. Trinity Sav. & Loan Ass'n
Discussed 1991 OK 95, 818 P.2d 475, 62 OBJ 2882, Robert L. Wheeler, Inc. v. Scott
Discussed 1992 OK 21, 826 P.2d 978, 63 OBJ 442, Hadnot v. Shaw
Discussed 1992 OK 111, 835 P.2d 870, 63 OBJ 2309, Handy v. City of Lawton
Discussed 1915 OK 483, 150 P. 186, 48 Okla. 386, WELLSVILLE OIL CO. v. MILLER et al.
Discussed at Length 1908 OK 10, 94 P. 512, 20 Okla. 142, HUSTON v. SCOTT
Discussed 1921 OK 197, 198 P. 866, 82 Okla. 89, KEETER v. STATE ex rel. SAYE Co. Atty.
Discussed 1969 OK 73, 455 P.2d 690, MARYLAND NATIONAL INSURANCE CO. v. DISTRICT COURT
Discussed 2002 OK 87, 61 P.3d 891, SMEDSRUD v. POWELL
Discussed at Length 2003 OK 53, 77 P.3d 581, EVERS v. FSF OVERLAKE ASSOCIATES
Discussed 2005 OK 15, 109 P.3d 336, IN THE MATTER OF J.L.M.
Discussed at Length 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIP
Discussed 2006 OK 27, 174 P.3d 559, MILLER DOLLARHIDE, P.C. v. TAL
Discussed 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed 2008 OK 21, 184 P.3d 518, ESTES v. CONOCOPHILLIPS CO.
Discussed 2008 OK 29, 198 P.3d 877, BIERMAN v. ARAMARK REFRESHMENT SERVICES, INC.
Discussed 2010 OK 58, 237 P.3d 199, STATE ex rel. EDMONDSON v. NATIVE WHOLESALE SUPPLY
Discussed at Length 2011 OK 56, 260 P.3d 1271, ACOTT v. NEWTON & O'CONNOR
Discussed 2012 OK 68, 281 P.3d 1278, SAMSON RESOURCES CO. v. NEWFIELD EXPLORATION MID-CONTINENT, INC.
Discussed 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed at Length 2013 OK 24, 301 P.3d 407, W.R. ALLISON ENTERPRISES, INC. v. COMPSOURCE OKLAHOMA
Discussed 1982 OK 64, 650 P.2d 854, Severns' Estate, Matter of
Discussed 1998 OK 129, 977 P.2d 1057, 70 OBJ 46, Burch v. Allstate Insurance Company
Discussed 1999 OK 36, 981 P.2d 301, 70 OBJ 1445, Sides v. John Cordes, Inc.
Discussed 1984 OK 73, 695 P.2d 498, Ricks Exploration Co. v. Oklahoma Water Resources Bd.
Discussed
Title 37. Intoxicating Liquors Cite
Name
Level 37 O.S. 600.21, Policy Toward Cigarette Smoking
Discussed 37 O.S. 600.23, Requirement for Manufacturers Selling Cigarettes to Consumers Within the State
Cited
Title 68. Revenue and Taxation Cite
Name
Level 68 O.S. 360.1, Short Title
Cited 68 O.S. 360.2, Legislative Declarations
Cited 68 O.S. 360.4, Certification of Tobacco Product Manufacturers
Discussed 68 O.S. 360.7, Violations - Seizures and Forfeitures
Discussed at Length 68 O.S. 360.8, Directory - Effective Dates - Damages
Cited 68 O.S. 360.5-1, Foreign Nonparticipating Manufacturer's Brand Families - Joint and Several Liability
Discussed